No. 21287.

GEORGE F. ALLEN *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(404 P.2d 266)

Decided July 19, 1965.

MACK WITTY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error was defendant in the trial court and we will refer to him as the defendant.

An information was filed in the district court of Park county in which the defendant was accused of committing the crime of aggravated robbery. He first appeared before the trial court on October 16, 1961, at which time the following took place:

"THE COURT: Case No. 3558, People of the State of Colorado versus George Fred Allen and Charles Wayne Hansen.

"Is Mr. Allen present in Court?

"DEFENDANT ALLEN: Yes, sir.

"THE COURT: Would you come forward, please.

"MR. NEVENS: Your name is George Fred Allen?

"DEFENDANT ALLEN: Yes, sir.

"MR. NEVENS: I hand you herewith a certified copy of the information which has been filed in this Court against you and Charles Wayne Hansen.

"To this information has been attached a list of the witnesses on behalf of The People of the State of Colorado. And also hand you at this time a copy of the jury list for this, the October Term of this Court.

"I'll read the information to you, which is as follows:

" (Whereupon, the information was read to the defendant after which the following proceedings were had: )

"THE COURT: Mr. Allen, are you represented by an attorney?

"DEFENDANT ALLEN: I'm not, no, sir.

"THE COURT: Are you going to get an attorney?

"DEFENDANT ALLEN: No, sir.

"THE COURT: Why not?

"DEFENDANT ALLEN: Well, I didn't figure I needed one.

"THE COURT: Do you want to enter a plea in this matter?

"DEFENDANT ALLEN: No. I'm not guilty. That's—

"THE COURT: You are going to plead not guilty?

"DEFENDANT ALLEN: Yes, your Honor.

"THE COURT: Let the record show that the defend-

ant, George Fred Allen, has entered a plea of not guilty.

"Are you on bond?

"DEFENDANT ALLEN: Yes, sir.

"THE COURT: We will have to continue this for a date certain — to a date certain.

"MR. NEVENS: We would ask that the matter be set down for trial.

"THE COURT: Mr. Allen, before the Court sets this down for trial, do you want to come into this Court without a lawyer?

"DEFENDANT ALLEN: Yeah. I don't need a lawyer.

"THE COURT: Pardon me?

"DEFENDANT ALLEN: I don't need no lawyer, I don't believe.

"THE COURT: I think you do, Mr. Allen. Now, I don't know anything about the facts of this case, of course, but it's foolish, in my opinion, for you to come in without an attorney. Now, you have a right to do that, if you wish. However, the Court feels that you should have an attorney. If you persist in that, or still feel that you don't want one, that's entirely up to you.

"DEFENDANT ALLEN: I can't afford an attorney, so I'll go without one.

"THE COURT: Well — how old are you, Mr. Allen?

"DEFENDANT ALLEN: I'm twenty-three.

"THE COURT: The Court can appoint an attorney for you if you have no funds, property, or anything of that kind. Do you have any property?

\* \* \*

"THE COURT: Do you have a job now?

"MR. ALLEN: Yes, sir.

"THE COURT: How much money do you make?

"DEFENDANT ALLEN: Well, right now I'm making about 150 a month.

"THE COURT: Is your board and room furnished to you?

"DEFENDANT ALLEN: Yes sir.

"THE COURT: Can you make arrangements to hire an attorney out of $150.00 a month?

"DEFENDANT ALLEN: Well, I talked to an attorney and he had to have a big down payment and I couldn't come up with it, so —

* * *

"THE COURT: Well, Mr. Allen, if you are working, you have $150.00 a month. Now, possibly the attorney that you talked to doesn't feel that he can represent you without a substantial payment, or whatever your arrangement with him was. I would suggest that you try another attorney, or several other attorneys. That's entirely up to you. But if you are working and have $150.00 a month coming in, this Court cannot bind the taxpayers of this county with attorney fees in your behalf. I would suggest that you get an attorney. I'm sure that you could find one. However, that's up to you. You do as you wish about it.

"This matter will be set for trial on January 8th, 1962, at Ten o'clock a.m. Bond will be continued in this matter. * * *"

On January 8, 1962, the defendant appeared and the court made inquiry as to whether he had an attorney. He stated that a friend of his was supposed to get an attorney for him but that he had not talked to the lawyer himself. It was apparent at this time that the defendant had done nothing himself in connection with securing the services of a lawyer. He told the court that following his first appearance in court he had lost the job which he had at that time and stated that he was then working in Breckenridge and still had a job there. The court then made the following statement directed to him:

"THE COURT: This matter will be continued until February 20th at Ten o'clock a.m. Bond will be continued in effect until that time.

"Now, between now and the 20th of February, Mr. Allen, you must get yourself a lawyer. The Court can go only so far in helping you protect yourself, helping you

get an attorney here. So, you must have an attorney by the 20th of February, you understand?

"DEFENDANT ALLEN: Yes, sir."

On February 20, 1962, the defendant again appeared and informed the court that a Denver lawyer was supposed to be present to represent him. In response to inquiries made by the court it was shown, however, that the defendant had made no arrangements for the appearance of a lawyer and that a friend of his was supposed to have done something about it for him. The court thereupon informed the defendant as follows:

"THE COURT: Mr. Allen, it's going to be necessary that you get your own attorney. Before he will undertake to represent you, you are going to have to see him some way. I don't think this is a matter that you should leave to some of your friends in Denver, or someone else to make arrangements about. I think that you need to do it yourself.

"DEFENDANT ALLEN: Well, I went to Utah — down there working, and I haven't been able to. He said he talked to him and everything was set, so I took his word for it. I've been down there working and I just got in last night, or this morning.

"THE COURT: You better make the arrangements yourself, Mr. Allen. This court is going to have — this matter is going to have to be tried, and you better make arrangements yourself so that you know you are going to have an attorney here. I think it would be very much in your interest to make arrangements with someone and have an attorney here at every step of this proceeding. * * *"

The cause was then set for trial on March 29, 1962, and defendant was told by the court:

"* * * We are going to go to trial on this, Mr. Allen. You better have your lawyer. Do you understand, sir?

"DEFENDANT ALLEN: Yes, sir.

"THE COURT: Very well."

On March 29, the cause was called for trial; the de-

fendant appeared without a lawyer and the following transpired:

"THE COURT: What do you propose to do?

"DEFENDANT ALLEN: Just go on without them, I guess. Gene and Mr. Nevens talked to me and told me I would just be wasting my money getting a lawyer.

"MR. NEVENS: Just a minute, that is not true.

"THE COURT: Now, just a minute, Mr. Nevens.

"Mr. Allen, this case was continued, and you were first in Court on the 16th of October, 1961.

"DEFENDANT ALLEN: Yes.

"THE COURT: At that time you told the Court that Mr. Witty was going to represent you.

"DEFENDANT ALLEN: I was going to get him, yes, sir.

"THE COURT: On January 8th, 1962 you came back again without an attorney. The Court continued that then until February 20th, 1962 for you to get an attorney.

"DEFENDANT ALLEN: Yes, sir.

"THE COURT: It was continued to this date for trial. It is my opinion, Mr. Allen, that you will have to go to trial this morning.

"DEFENDANT ALLEN: Yes.

"THE COURT: You have been given ample opportunity to get an attorney, or to contact an attorney, and it is the opinion of the Court that we'll have to try this matter this morning.

"DEFENDANT ALLEN: Yes. * * *"

The cause proceeded to trial with no attorney representing the defendant.

The defendant was found guilty and was sentenced to a term of five to ten years in the state penitentiary. The judgment and sentence were duly entered. On December 24, 1963, the defendant filed a Motion to Vacate Sentence, under Rule 35(b) of the the Rules of Criminal Procedure of Colorado, in which he alleged that under Article II, Section 16 of the Colorado Constitution, and

under the due process clause of the United States Constitution, his constitutional right to counsel was violated in that the trial court refused to appoint counsel to defend him although he was indigent. This motion was denied January 31, 1964, at which time the court stated, inter alia:

"It is important to note that defendant was free on bond at every stage of the proceeding until he was convicted. He was gainfully employed at least from October 16, 1961 until the date of trial on March 29, 1962. During this period of more than five months the defendant did not hire an attorney even though he had at least $150.00 per month in excess of his expenses and had no family obligations. Also, during this period of time the defendant informed the Court that he would be represented by Mr. Witty, then by Mr. Mountain from Denver, and then by Mr. Butler from Denver."

The trial court by order dated February 21, 1964, appointed counsel to represent the defendant in the prosecution of this writ of error. The record certified to this court contains only the proceedings upon which the trial court relied in denying the defendant's Motion to Vacate the Sentence.

On this writ of error counsel for defendant presents argument under three captions as follows:

"I.

"The trial court erred in not ascertaining the indigency of the defendant and appointing him an attorney.

"II.

"The trial court erred by not recognizing the fact that the defendant did not understand the procedure.

"III.

"The trial court erred in allowing the defendant to go to trial on the serious charge of aggravated robbery without an attorney."

Basically, they all involve determination of the primary question of whether the requirements of Rule 44,

Colo. R. Crim. P. were complied with. The rule reads as follows:

"If the defendant appears in court without counsel, the court shall advise him of his right to counsel. In any felony case, if upon the defendant's affidavit or sworn testimony and other investigation the court finds that the defendant is financially unable to obtain counsel, an attorney shall be assigned to represent him at every stage of the trial court proceedings."

Whether the above rule was complied with under the circumstances of this case involves the further question of whether and to what extent, the trial court had a continuing duty to inquire into and to investigate the financial ability of the defendant to obtain an attorney.

■ The right of a person accused of crime to be represented by an attorney can no longer be challenged. *Gideon v. Wainwright,* 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799. It is equally true that an accused must be informed of his right to the advice and assistance of counsel. *Uveges v. Pennsylvania,* 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed2d 127. In this state the adoption of Rule 44, *supra,* nullified the holding of this court in *Kelley v. People,* 120 Colo. 1, 206 P.2d 337. The rule imposes upon the trial court the affirmative duty to advise all criminal defendants who appear without counsel of the right to counsel. This duty is to be discharged without regard to the financial condition of the accused. Whether affluent or indigent, the defendant must be advised of his right to counsel. After being so advised, inquiry into the defendant's financial ability to employ counsel may be pertinent. If it appears that the defendant has sufficient means to employ an attorney of his own choosing, then he must be accorded a reasonable opportunity to do so. *Uveges v. Pennsylvania, supra.* On the other hand, "if upon the defendant's affidavit or sworn testimony and other investigation the court finds that the defendant is financially unable to obtain counsel, an attorney shall be

assigned to represent him at every stage of the trial court proceedings."

In the instant case, the defendant concedes the proper application of Rule 44, *supra*, by the trial court at the time of his initial appearance before the court. He concedes that he was advised of his right to counsel, and he does not challenge the trial court's finding of his then financial ability to employ counsel. On the contrary, his entire case is predicated upon the assumption that Rule 44 inflicts upon the trial court some continuing duty to investigate and inquire concerning the financial resources of a criminal defendant, to make certain that he does not become indigent. With this assumption we do not agree.

■ The intent of the rule is that after the court has informed the accused of his right to be represented by counsel, some kind of showing must be made by the defendant as to his indigence; and the court's duty to assign an attorney to represent him arises only after a showing has been made by him that he is indigent and unable to secure counsel from his own resources. The rule does not require the trial court to maintain a continuing vigilance over the financial affairs of one accused of crime in order to ferret out his poverty potential. In the instant case the trial court fully advised the defendant of his right to be represented by an attorney, and, upon questioning him, determined that he was able to secure the services of an attorney. Ample time was given to prepare for trial. Thereafter, the burden rested upon the defendant to apprise the court of any change in circumstances resulting in indigency.

■■ Between the defendant's first appearance in court on October 16, 1961, and his trial on March 29, 1962, the only change of circumstances discernible from the record is his change of employment. When he appeared on October 16, he was employed by Red McHale and was clearing $150.00 per month. When he appeared

on January 8, 1962, he told the court that he had lost his job right after his previous appearance in court and had "been over in Breckenridge working." On February 20, 1962, the defendant told the court, "Well, I went to Utah — down there working." He contends that these comments concerning his changes in employment were sufficient to advise the court of his indigence, or at least to put the court on notice that further inquiry should be made of his financial ability to obtain counsel. The defendant is not entitled to a presumption of poverty. The mere fact that he lost one job and obtained another does not warrant the inference that he was making less money. Nor does the fact that he left his second job and went to Utah to work justify such an inference. For all that appears in the record, his income may have increased with each change of employment. It is just as reasonable to suppose that his reason for changing jobs was to improve his financial condition as it is to assume the contrary. The trial court must be "satisfied that the defendant is not possessed of sufficient means and is actually unable to pay" before the assignment of counsel is warranted. *In re Patterson,* 136 Colo. 401, 317 P.2d 1041.

It is argued as grounds for reversal that in overruling the motion to vacate the judgment the trial court denied due process of law to the defendant. Rule 35 (b), *supra,* requires that the trial court grant a prompt hearing on such a motion "unless the motion and the files and record of the case show to the satisfaction of the court that the prisoner is not entitled to relief." The showing made in the instant case has been fully reviewed and considered. We believe that it fails to reveal any deprivation of constitutional rights which would entitle the defendant to the relief sought.

The judgment is affirmed.

MR. JUSTICE DAY specially concurs.

Mr. Justice Day specially concurring:

In concurring in this opinion I wish to make a special point of the fact that this decision is in no way out of harmony with *Elliott v. District Court*, 157 Colo. 229, 402 P.2d 65.

Although Elliott, like Allen in the case at bar, was employed, he did all of the things necessary to show to the court that he was in fact indigent, and that after paying his expenses for himself, a wife and two children, he, in fact, had no money left over to pay counsel fees. As a more detailed recital of the record discloses in this case, Allen did nothing that Elliott did to show to the court a condition of indigency.