The PEOPLE of the State of Colorado, Petitioner/Cross–Respondent

v.

Paul ALENGI, Respondent/Cross–Petitioner.

The People of the State of Colorado, Petitioner

v.

Nancy Aloha Alengi, Respondent.

Nos. 04SC493, 04SC494.

Supreme Court of Colorado, En Banc.

Nov. 27, 2006.

John W. Suthers, Attorney General, John J. Krause, Assistant Solicitor General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent, in Case No. 04SC493, Attorneys for Petitioner, in Case No. 04SC494.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent/Cross–Petitioner, Paul Alengi.

Stiner, Beck, Jonson & Nolan, LLP, Jennifer L. Melton, Denver, Colorado, Attorneys for Respondent, Nancy Alengi.

Chief Justice MULLARKEY delivered the Opinion of the Court.

### Introduction

We granted certiorari to resolve a split of authority between two divisions of the court of appeals, which adopted different analyses and reached opposite results in identical appeals. Nancy and Paul Alengi, a married couple, were tried and convicted in a joint trial of the same offenses. Prior to trial, the Alengis' privately-retained attorneys were allowed to withdraw from representation. Thereafter, the Alengis repeatedly advised the court they were in the process of converting their assets to cash in order to retain replacement counsel. The court gave the couple an *Arguello* advisement, during which the Alengis assured the court they understood that they had the right to counsel, they were not entitled to court-appointed counsel, and they would waive their rights to counsel should they continue to delay. After several continuances, the court found the Alengis had waived their right to representation. They proceeded to trial *pro se* and were convicted on all counts.

The Alengis separately appealed their convictions, and both asserted their Sixth Amendment right to counsel was violated because the trial court failed to make a detailed inquiry of their financial affairs before concluding they impliedly waived that right. In *People v. Nancy Aloha Alengi*, 114 P.3d 883 (Colo.App.2004), the court of appeals reversed Nancy Alengi's conviction on the basis that the trial court should have inquired into her financial circumstances before ruling she had waived her right to counsel. In *People v. Paul Alengi*, 114 P.3d 11 (Colo.App.2004), however, a separate court of appeals' panel rejected the same argument and affirmed Paul Alengi's conviction.[1] We granted certiorari in both cases.

Upon review, we find the advisement given to the Alengis was sufficient. The trial court had no duty to inquire into the Alengis' financial situation in the absence of an affirmative statement by the Alengis that they could not afford counsel or a request by them for court-appointed counsel. Accordingly, we conclude the Alengis' Sixth Amendment assistance of counsel rights were not violated.

---

**1.** We granted certiorari to consider the following issues:

1. Whether the Sixth Amendment right to counsel requires the trial court to make a detailed inquiry of a defendant's financial affairs before a waiver of the right to counsel is valid. [granted in relation to both *People v. Nancy Aloha Alengi* and *People v. Paul Alengi*]

2. Whether the court of appeals can reject defendant's admission that she was not indigent during an *Arguello* inquiry in determining whether her waiver of the right to counsel is valid. [granted in relation to *People v. Nancy Aloha Alengi*]

3. Whether the court of appeals denied Mr. Alengi his constitutional right to equal protection when it affirmed his convictions and reversed Mrs. Alengi's convictions even though Mr. and Mrs. Alengi were identically situated on appeal. [granted in relation to *People v. Paul Alengi*]

We uphold the judgment of the court of appeals in *People v. Paul Alengi* and reverse the court of appeals' judgment in *People v. Nancy Aloha Alengi.*[2]

## I. Facts and Procedural History

Nancy and Paul Alengi were arrested at their home in early 2000 after police executed a no-knock search warrant. The search yielded chemicals and equipment used to manufacture methamphetamine, various drug paraphernalia that tested positive for methamphetamine, and several guns. In April 2000, the Alengis were both charged with possession of a Schedule II controlled substance,[3] manufacturing a Schedule II controlled substance,[4] and a special offender charge for the possession of a deadly weapon in the commission of the drug felonies.[5] Their cases were handled jointly in all aspects, but each defendant originally retained separate counsel, who filed several pretrial motions and attended pretrial hearings.

The following year, the Alengis' respective attorneys attempted to withdraw on three separate occasions, citing their clients' lack of cooperation, non-payment, and efforts to manufacture grievances. During the third such request, on October 16, 2001, the court granted the motions after the Alengis failed to respond or appear. At that time, counsel for both defendants noted they had provided the Alengis indigency forms to obtain an investigator at state expense, but the Alengis never completed those forms.

At their next court appearance on November 2, 2001, the Alengis appeared accompanied by Joseph Saint–Veltri, an attorney who had been approached by the Alengis to represent Mr. Alengi but who had not yet been retained. Ms. Alengi stated she had also been in contact with a Mr. Wollrab to represent her, whom she promised she could and would retain. The court warned the Alengis they could not delay the trial schedule by failing to appear with counsel. It cautioned them that such behavior would waive their right to representation and would force them to move forward at the motions hearing *pro se.* The Alengis indicated they understood.

On November 16, 2001, the scheduled date for the motions hearing, the Alengis arrived without counsel. They told the court that although they had spoken with Mr. Saint–Veltri, he refused to represent them until they were able to pay his retainer, which required them to convert some of their assets into cash. Ms. Alengi assured the court they had the money to retain Mr. Saint–Veltri but they had not been able to come up with it as of that morning. However, the Alengis said they "absolutely" were able to secure their own attorneys, and, when the court inquired as to how much time the Alengis would need to liquidate their assets, they responded, "within two weeks." The court then issued the Alengis an advisement under *People v. Arguello,* 772 P.2d 87 (Colo.1989):

> COURT: Do each of you understand that you have the right to be represented by counsel throughout these proceedings and that is individual counsel for both of you?
>
> MRS. ALENGI: Yes, sir. MR. ALENGI: Yes, sir.
>
> COURT: Do you understand that if you cannot afford an attorney one will be provided for you free of charge? By not affording an attorney you qualify for appointment of public defender or alternate counsel, do you understand that?
>
> MRS. ALENGI: Yes, sir.
>
> MR. ALENGI: Yes, sir.
>
> COURT: Do you understand that I will appoint counsel if you want an attorney to represent you, do you understand that?
>
> MRS. ALENGI: Yes, sir.
>
> MR. ALENGI: Yes, sir.

To confirm the Alengis did, in fact, understand their rights and were knowingly declining the court's offer to appoint counsel, the court again questioned the Alengis:

> COURT: Are you requesting the Court appoint counsel for you? Are you saying

---

**2.** In light of our holding, we do not address the equal protection issue.

**3.** § 18–18–405(2)(a)(I), C.R.S. (2000).

**4.** § 18–18–405(1)(a), C.R.S. (2000).

**5.** § 18–18–407(1)(f), C.R.S. (2000).

that you are indigent and entitled to court appointed counsel?

MRS. ALENGI: No, sir.

COURT: Do you both agree you are not entitled to court appointed counsel?

MRS. ALENGI: That's correct.

MR. ALENGI: (Defendant nods head.)

Following this colloquy, the court warned the Alengis three times that if they failed to appear with attorneys, the court would deem such an appearance a waiver of their right to counsel: "If after understanding all these rights you do not obtain counsel, you will go forward and I will deem that a waiver of all these rights and I will deem that an election on your part to go forward without counsel if you do not retain counsel; is that very, very clear?" Both defendants replied that they understood, and the court ordered them to return in ten days with counsel to set a schedule for the motions hearing.

On November 26, the Alengis once again appeared without counsel and indicated they would need a week to ten days more to liquidate their assets. The prosecution protested against the Alengis' delay tactics, but the court allowed them additional time to secure representation. However, the court twice admonished the Alengis that they were required to retain attorneys within that next week or they would be deemed to have waived their right to counsel. The Alengis replied that they understood.

On December 3, the Alengis again appeared without counsel but unequivocally stated that both Mr. Saint–Veltri and Mr. Wollrab would be entering appearances before December 14. The court requested the Alengis return with their counsel two days hence to set the date for the motions hearing.

However, on December 5, the district attorney reported that both Mr. Saint–Veltri and Mr. Wollrab, when contacted, had adamantly denied they represented the Alengis. The court expressed dismay that the Alengis had failed to retain representation after four weeks of continuances, but the Alengis insisted that payment for assets they were selling was merely stalled due to external factors outside of their control. The court set a date for the motions hearing based on the sched-

ule of Mr. Wollrab and requested the Alengis alert both Mr. Wollrab and Mr. Saint–Veltri of that date. The court concluded the interchange by remarking, "And if you have counsel, and I hope you do, but if you do not we've had sufficient time and I will find that we are going to go ahead with those motions hearings on that date."

On December 13, the Alengis again appeared without counsel, and the court found they had impliedly waived their right to representation. Accordingly, the court held the scheduled motions hearing that day, despite the Alengis' protestations that they had the money necessary to hire Mr. Saint–Veltri and Mr. Wollrab but could not access those funds for another few days. Trial began on January 8, 2002. The Alengis again appeared *pro se*, although the court encouraged them to bring in counsel at any point during the trial. After a trial lasting several days, both were convicted of all charges.

The court of appeals reversed Nancy Alengi's conviction, finding her Sixth Amendment right to assistance of counsel was violated. *People v. Nancy Aloha Alengi*, 114 P.3d at 889. The court of appeals held that the trial court was obligated to undertake an inquiry into Nancy Alengi's financial situation *sua sponte*. *Id.* at 888. Because Nancy Alengi repeatedly stated she wanted counsel but could not yet convert assets to cash to pay a retainer, the court of appeals reasoned that her inability to pay counsel was an "obvious issue" necessitating further court investigation. *Id.*

Meanwhile, a separate division of the court of appeals upheld Paul Alengi's conviction on the basis that Paul Alengi never told the trial court that he could not afford an attorney or that he wanted an attorney appointed for him. *People v. Paul Alengi*, 114 P.3d at 15. The court of appeals concluded that "to require a trial court to ignore a defendant's otherwise knowing and intelligent responses renders an *Arguello*-like colloquy a meaningless exercise." *Id.*

We granted certiorari to resolve the court of appeals' divergent opinions as to these two identically-situated defendants.

## II. Analysis

 Effective waiver of counsel is a mixed question of fact and law that we review de novo. *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir.1995); *People v. Stanley*, 56 P.3d 1241, 1244 (Colo.App.2002).

 The fundamental right to the assistance of counsel is constitutionally guaranteed by the Sixth Amendment. *Argersinger v. Hamlin*, 407 U.S. 25, 30–31, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Arguello*, 772 P.2d at 92. The right to counsel encompasses both the right to a retained attorney for a defendant who is financially able to pay for legal representation, and the right to a court-appointed counsel for an indigent defendant. *King v. People*, 728 P.2d 1264, 1268 (Colo.1986); *People v. Rawson*, 97 P.3d 315, 317 (Colo.App.2004). A defendant need not be destitute to qualify for court-appointed counsel; "it is sufficient that the defendant lack the necessary funds, on a practical basis, to retain competent counsel." *Nikander v. Dist. Court*, 711 P.2d 1260, 1262 (Colo.1986). A defendant also has a correlative constitutional right to self-representation. *Faretta v. California*, 422 U.S. 806, 814, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Arguello*, 772 P.2d at 92. That right may be asserted affirmatively or by inference when the defendant declines to be represented by counsel. *Arguello*, 772 P.2d at 93.

 A defendant may waive assistance of counsel either expressly or impliedly through his or her conduct. *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). An implied waiver occurs when the defendant is deemed to have forfeited the right to counsel, as opposed to having made a deliberate decision to forgo the right. *Arguello*, 772 P.2d at 93.

 Courts must ascertain whether, under the totality of the circumstances, a defendant's conduct evinces a voluntary, knowing, and intelligent waiver of right to counsel. *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); *King*, 728 P.2d at 1268. Thus, the record as a whole, including the reasons given by the defendant for not having counsel, must show that the defendant knowingly and willingly undertook a course of conduct that demonstrates an unequivocal intent to relinquish or abandon his or her right to representation. *King*, 728 P.2d at 1269. A defendant's pattern of obstreperous, truculent, and dilatory behavior may be deemed relevant as to whether such conduct has been undertaken with full awareness of the consequences of doing so. *Arguello*, 772 P.2d at 96; *see People v. Tellez*, 890 P.2d 197, 198 (Colo.App.1994) ("the defendant cannot delay his trial indefinitely under the guise of seeking counsel").

 Because there exists a strong presumption against the waiver of a fundamental constitutional right, the trial court has the duty to make a careful inquiry about the defendant's right to counsel and his or her desires regarding legal representation. *King*, 728 P.2d at 1269. In *Arguello*, we established that before finding a valid implied waiver, a court must properly advise the defendant in advance of the consequences of his or her actions. 772 P.2d at 94–95. While we prescribed no formulaic inquiry, we did instruct courts to probe, at a minimum, the defendant's awareness of the right to counsel and the defendant's understanding of the many risks of self-representation. *Id.; Stanley*, 56 P.3d at 1244; *see also* Crim. P. 44(a) ("If the defendant appears in court without counsel, the court shall advise the defendant of the right to counsel.").

To facilitate this inquiry, we recommended the trial judge engage in a dialogue with the defendant according to the guidelines set forth in the *Colorado Trial Judges' Benchbook*, which lists a series of questions the trial judge should ask the defendant before finding a waiver. Colorado Judicial Department, *Colorado Trial Judges' Bench Book*, § 1.8.3 (1991). Included in that list are inquiries designed to ascertain whether the defendant believes he or she qualifies financially for court-appointed counsel and to inform the defendant that the court can appoint counsel to provide representation if it is needed.

 After the court has informed the defendant of the right to representation, however, the defendant bears the initial bur-

den to establish his or her inability to afford counsel. *Nikander*, 711 P.2d at 1262. A court need not presume the defendant is impoverished or indigent. *Allen v. People*, 157 Colo. 582, 591, 404 P.2d 266, 271 (1965). Rather, the court's duty to assign an attorney to represent the defendant arises only after the defendant has made a showing of financial inability to secure counsel. *Id.* And thereafter, the trial court is not obligated to maintain continuing vigilance over the affairs of a defendant in order to ferret out changes in the defendant's financial circumstances. *Id.*

## A. Voluntary Waiver

■ We now turn to an examination of whether the Alengis' implied waiver was knowing and voluntary, and whether the court was obligated to inquire further into the Alengis' financial situation before determining that they had impliedly waived their Sixth Amendment right to counsel. The Alengis urge this court to adopt a rule requiring trial courts to disregard defendants' representations that they are not indigent and, instead, explore defendants' financial affairs seeking to uncover whether they might qualify for court-appointed counsel. We decline to adopt such a rule. Rather, we hold that courts initially need delve no further into the financial dealings of unrepresented defendants than to engage in an *Arguello* colloquy, which should include queries designed to elicit whether defendants believe they can afford counsel. A trial court will be obligated to engage in a more searching investigation only if defendants place the court on notice by indicating that they cannot retain counsel or that they believe they might qualify for court-appointed counsel.

At the heart of the case before us today is the *Arguello* advisement the court gave to the Alengis on November 16, 2001. During the advisement, the Alengis were asked several questions intended to allow the court to discern whether the Alengis could comprehend the warnings issued. Specifically, the court asked questions regarding the Alengis' respective educational backgrounds, and their familiarity with and training in the legal system. The court also inquired as to wheth-

er the Alengis were under the influence of any substance that would impair their understanding of the proceeding. The Alengis' answers painted a picture of "literate, competent, and understanding" defendants who were able to grasp and respond to the questions posed. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. The court also asked questions gauging the Alengis' comprehension of the charges against them, the severity and repercussions of those charges, the difficulties faced by *pro se* defendants, the benefits of assistance of counsel, and their rights as defendants in a criminal trial. The record shows that to each question, the Alengis supplied cogent, clear answers, revealing they possessed the requisite ability to understand that their continued failure to retain counsel would result in a waiver of their right to representation. We find the trial court alerted the Alengis of the dangers and disadvantages of self-representation such that the record established they knew what they were doing, and their choice was made with eyes open. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Reliford v. People*, 195 Colo. 549, 552, 579 P.2d 1145, 1147 (1978). In light of the totality of the circumstances, the Alengis knowingly and willingly undertook a course of conduct that demonstrated an unequivocal intent to relinquish their rights to legal representation.

## B. Financial Inquiry

Having determined that the Alengis had an intelligent understanding of the consequences of failing to obtain counsel, we now address whether the trial court was obligated to probe further into the Alengis' financial situation, notwithstanding their representations that they neither needed nor qualified for a court-appointed attorney.

The Alengis contend *King v. People*, 728 P.2d 1264 (Colo.1986), compels a finding that the trial court did not engage in a sufficiently detailed inquiry into their financial affairs to determine eligibility for court-appointed counsel. In support, the Alengis point to language in *King* directing trial courts "to make a careful inquiry about the defendant's financial condition, the defendant's under-

standing of his right to counsel, and his desires regarding legal representation." *Id.* at 1270.

█ The holding in *King*, however, need not and should not be extended as the Alengis urge. In *King*, the defendant expressed a desire to obtain representation from the public defender's office and submitted papers to that office immediately before trial. *Id.* at 1266. Although the defendant believed the public defender would enter an appearance by phone, the public defender failed to appear. *Id.* at 1276. Significantly, the defendant acknowledged he did not have the financial means to secure the attorney he had originally sought, which led him to contact the public defender, but nevertheless the court forced him to trial *pro se* without any advisement as to his rights as a criminal defendant. *Id. King's* central tenet—that a criminal defendant must be adequately apprised of the constitutionally-guaranteed right to counsel—in no way imposes on a trial court the duty to delve into the financial affairs of one accused of a crime, particularly in the face of a defendant's affirmative representations that he or she does not need court-appointed counsel. Only when a defendant, as in *King*, states that he or she cannot afford counsel or would like the court to appoint an attorney is a court then required to make a careful financial inquiry to determine eligibility for court-appointed counsel. *United States v. Martin–Trigona,* 684 F.2d 485, 490 (7th Cir.1982).

Such a rule comports with case law, statutes, and other directives that place the burden of raising the issue of indigency for purposes of appointment of counsel squarely on the defendant. *Nikander,* 711 P.2d at 1262; § 21–1–103(3), C.R.S. (2006) (outlining a procedure whereby determination of indigence is reviewed by the trial court after a decision is made by the state public defender based on the submission of an appropriate application by the defendant); Chief Justice Directive, Appointment of State–Funded Counsel in Criminal and Juvenile Delinquency Cases, 04–04 (2006) (placing the onus on the defendant to complete the necessary application before the court considers indigency); Crim. P. 44(a) (obliging a trial court to inquire into a defendant's financial situation only upon submission of the defendant's affidavit or sworn testimony and other investigation).

Indeed, *Allen v. People,* 157 Colo. 582, 404 P.2d 266 (1965), and *People v. Litsey,* 192 Colo. 19, 555 P.2d 974 (1976), more closely parallel the facts presented here and outline the concomitant obligations imposed on a trial court in such a situation. In *Litsey,* this court did not require a financial inquiry before finding a valid waiver of counsel. The defendant began the proceedings with a public defender and then retained a private attorney, whom he later discharged. *Id.* at 23, 555 P.2d at 977. He informed the court during his advisement that he was not indigent and did not require appointed counsel, so the court gave him twelve days to retain an attorney, warning that if counsel had not entered an appearance within that time the court would require him to proceed *pro se.* *Id.* The defendant made no attempt to hire counsel and appeared *pro se* at trial. This court concluded the trial court properly construed the defendant's conduct as waiver and upheld the conviction. *Id.*

Likewise, in *Allen,* the defendant appeared *pro se* before the court. 157 Colo. at 584–85, 404 P.2d at 268. During his advisement, he asserted he did not want an attorney because of the expense. The trial court found him ineligible for court appointed counsel, and it warned him he would be deemed to have waived his right to counsel should he fail to hire an attorney. *Id.* at 586–87, 404 P.2d at 268–69. On appeal, the defendant argued his financial circumstances had changed since his advisement and thus the trial court should have made further inquiry prior to trial. *Id.* at 589, 404 P.2d at 270. This court rejected a continuing duty by the trial court to investigate a defendant's financial resources following an initial declaration by the defendant himself that he was not entitled to appointed counsel. *Id.* at 591, 404 P.2d at 271.

█ Our holding in *Arguello* requires nothing different. An *Arguello* advisement calls for the trial court to instruct the defendant as to his or her rights at trial, thereby ensuring that any waiver of these rights is done knowingly and intelligently, fully ap-

prised of the consequences. 772 P.2d at 94–95. Included in an *Arguello* advisement is an instruction to the defendant regarding the right to counsel and the court's obligation to appoint counsel if the defendant cannot afford to retain an attorney. *Id.* at 98. But it remains the defendant's obligation, at a minimum, to notify the court that he or she cannot afford to retain counsel before the court's duty to inquire further is triggered.

 In the case before us today, the court twice asked the Alengis during their *Arguello* advisement whether they knew the court would appoint counsel for them if they could not afford to hire counsel on their own. They replied that they did. Later, the court asked the Alengis if they were requesting the court appoint counsel for them, and Ms. Alengi replied that they were not. Finally, the court asked the Alengis to confirm that they were not entitled to court appointed counsel. Ms. Alengi responded, "That's correct," and Mr. Alengi nodded his head in agreement.

Notably, the trial court did not assess the Alengis' statements in a vacuum. Prior to their attorneys' withdrawal, the Alengis appeared before the court with retained counsel for more than a year. During the hearing for withdrawal, counsel for the Alengis told the court that they had provided the Alengis with indigency forms to obtain an investigator at state expense, but the Alengis never completed those forms. And after that time, the Alengis appeared before the court on five separate occasions prior to the motions hearing. At each appearance, the Alengis pledged that they were making efforts to retain counsel, and they insisted they could promptly convert their assets into cash in order to secure representation. Under these facts, the court had sufficient evidence to conclude it need not second guess the Alengis' representations that they were ineligible for court-appointed counsel.

### III. Conclusion

We conclude the trial court here needed to delve no further into the financial dealings of the Alengis than to engage in an *Arguello* colloquy, which included queries designed to elicit whether the Alengis believed they could afford counsel. Further, the trial court had no duty to disregard the Alengis' statements that they did not need court-appointed counsel in order to conduct a more detailed inquiry into their financial status. We therefore affirm *People v. Paul Alengi*, 114 P.3d 11 (Colo.App.2004). We reverse *People v. Nancy Aloha Alengi*, 114 P.3d 883 (Colo.App. 2004), and we remand that case to the court of appeals with instructions to reinstate the judgment of the trial court.

Justice EID does not participate.