The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 9, 2019

## 2019COA70

**No. 18CA0186, *People in Interest of J.V.D.* — Juvenile Court — Delinquency — Waiver of Right to Counsel; Constitutional Law — Sixth Amendment — Right to Counsel**

A division of the court of appeals considers the requirements of a juvenile's valid waiver of the constitutional right to counsel. The division concludes that a juvenile court has an expanded duty of careful inquiry into a juvenile's understanding of his or her right to counsel before the court can find that a waiver is voluntary, knowing, and intelligent. A juvenile must benefit not only from the constitutional standards that apply to adults — (1) presumptions against a waiver; (2) advisement regarding the many risks of self-representation; and (3) inquiry into his or her understanding of those risks and the reasons for the requested waiver — but also from the statutory requirements of section 19-2-706(2)(c), C.R.S

2018 — (4) an inquiry into the juvenile's maturity; (5) an inquiry into the juvenile's understanding that counsel will be provided regardless of a parent's or guardian's ability or willingness to do so; and (6) findings on the record.

Relying on *People v. Janis*, 2018 CO 89, the division also concludes that in cases such as this one, where the challenge relies solely on the facts in the record, an appellate court can address waiver on direct appeal.

Because the juvenile court did not fulfill its constitutional or statutory duties to secure an effective waiver, the division concludes that the juvenile's right to counsel was violated. The division reverses the juvenile's delinquency adjudication and remands for a new trial.

Court of Appeals No. 18CA0186
Gunnison County District Court No. 17JD8
Honorable J. Steven Patrick, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of J.V.D.,

Juvenile-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE RICHMAN
Navarro and Welling, JJ., concur

Announced May 9, 2019

Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Tara Jorfald, Alternate Defense Counsel, Lakewood, Colorado, for Juvenile-
Appellant

¶ 1     The juvenile, J.V.D., appeals his delinquency adjudication on a charge of first degree criminal trespass.  Because we agree with him that his right to counsel was violated when he proceeded without representation despite no valid waiver of that right, we reverse the adjudication.

## I. Background

¶ 2     According to the prosecution's evidence, J.V.D., then sixteen years old, opened the window of his neighbor's trailer, but left after the neighbor's face appeared in the window.

¶ 3     Nearly six months later, J.V.D. received a notice to appear concerning an allegation of second degree criminal trespass — a class 3 misdemeanor.  He appeared at the hearing with his mother.  There, the juvenile court advised them, as relevant here, (1) of the allegation of second degree trespass; (2) that if he pleaded guilty or was found guilty at trial, he could be sentenced to the Department of Youth Corrections; and (3) that he had the right to be represented by counsel and that a public defender would be appointed if he was financially qualified.  J.V.D. asked the court if he could represent himself.  After cautioning him that the proceedings could be complicated and that he might get bad advice

1

from a nonlawyer, it responded that he had the right to represent himself.

¶ 4    J.V.D. proceeded to debate his Sixth Amendment right to a jury trial with the juvenile court, and it advised him repeatedly that he was "getting bad advice." The court offered to appoint a guardian ad litem (GAL), and J.V.D. declined. As the court attempted to conclude the proceedings, J.V.D. asked whether the case was a civil or criminal action. The court briefly explained that a juvenile delinquency case was neither civil nor criminal but was analogous to a criminal case, and it repeated its caution against getting legal advice from nonlawyers.

¶ 5    A week later, the prosecution filed a delinquency petition charging first degree criminal trespass, a class 5 felony, not the second degree trespass about which J.V.D. had been advised. A copy of the petition was mailed to J.V.D.'s mother, but the envelope was returned unclaimed.

¶ 6    At the plea hearing, J.V.D. stated that he did not wish to enter a plea until some of his questions were answered. He asked for information on the nature and cause of the action, whether the action was civil or criminal, and "for the rule-book — the

regulations, the rules, the codes, the statutes — in order for me to intelligently defend myself."

¶ 7      The juvenile court suggested that perhaps he should have an attorney, but J.V.D. said that he was not looking for legal advice. The prosecutor asked for a GAL to be appointed. J.V.D. objected, and his mother agreed that a GAL was not necessary. The court did not appoint a GAL.

¶ 8      J.V.D. pressed the court regarding his questions. The court told him that he had been informed of the nature of the proceeding, directed him to go to the library to find the relevant information, deemed his actions to be a denial of the petition, and set the matter for trial.[1] J.V.D. repeatedly objected to the involuntary entry of a plea. The matter was set for trial six weeks later.

¶ 9      At the outset of trial, J.V.D. "totally object[ed] to the proceeding" because he did not "know the full nature and cause," and he had been unprepared to enter a plea. The juvenile court

---

[1] The court later directed J.V.D. to title 19, the Juvenile Rules, and section 18-4-502, C.R.S. 2018 (the first degree criminal trespass statute).

took a few moments to explain jurisdiction and then proceeded with the trial.

¶ 10    J.V.D. acted pro se at trial, though he was also represented by his mother.[2]  He was not invited to give an opening statement, and he did not testify or call any witnesses, though he claimed that he had an alibi.  His mother made some objections, asked some questions on cross-examination, and made closing arguments.  Both J.V.D. and his mother made clear that they had not accessed any of the exhibits or the police report before trial.[3]

¶ 11    The juvenile court adjudicated J.V.D. delinquent.  Due in part to two prior adjudications for possession/consumption of marijuana and misdemeanor criminal mischief — each of which

---

[2] We have not found Colorado authority granting juveniles the right to be represented by their parents in a delinquency adjudication. Generally, only a licensed attorney may represent a client in court proceedings.  *See Cikraji v. Snowberger*, 2015 COA 66, ¶ 14 (where the plaintiff was not a licensed attorney in Colorado, he could not represent his son in court proceedings without an attorney).  And parents do not have a personal right to participate.  *See People in Interest of J.P.L*, 214 P.3d 1072, 1077 (Colo. App. 2009).  (Even "parents named as parties in a juvenile delinquency proceeding do not have a due process right to participate in the adjudicative proceedings.")

[3] A copy of the endorsement of witnesses and exhibits was mailed to J.V.D., care of his mother, but the envelope was returned as not deliverable.

4

had resulted in a plea agreement — the court sentenced him to one to two years in the custody of the Department of Youth Corrections.

¶ 12    J.V.D. is represented by counsel on appeal. He contends that he did not effectively waive his right to counsel at trial.[4] We agree.

## II. Applicable Law

¶ 13    The Fourteenth Amendment and the Bill of Rights are not for adults alone; however, not all of their protections extend to juveniles. *In re Gault*, 387 U.S. 1, 13-14 (1967). Though a juvenile facing delinquency proceedings is not afforded constitutional rights coextensive with those afforded adults in criminal proceedings, a juvenile enjoys the right to counsel because "[t]he juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it." *Id.* at 36 (footnote omitted); *see L.O.W. v. Dist. Court*, 623 P.2d 1253, 1256 (Colo. 1981) ("Rights provided to adult defendants [are not] uniformly available to juveniles because the

---

[4] In his opening brief, J.V.D. contended that his indeterminate sentence was illegal. He withdrew that contention in his reply brief, so we do not address it.

protective purposes of juvenile proceedings preponderate over their punitive function.").

¶ 14    While the juvenile court in this case apparently recognized it, a juvenile in Colorado may not enjoy a corollary constitutional right to self-representation. *Faretta v. California*, 422 U.S. 806, 819-20 (1975), holds that the Sixth Amendment implies the right to self-representation, but neither the Supreme Court nor the State of Colorado has expressly extended the right of self-representation to juveniles. Indeed, section 19-2-706(2)(a), C.R.S. 2018, seems to suggest that a juvenile in Colorado does not have that right, as it authorizes the court to appoint counsel "on its own motion, [if it] determines that counsel is necessary to protect the interests of the juvenile or other parties."[5]

---

[5] Other states approach this right in one of three ways. Some states recognize the juvenile's right. *See L.D.S.J. v. State*, 14 So. 3d 289, 290 (Fla. Dist. Ct. App. 2009) (a juvenile's knowing and intelligent waiver of counsel requires, as relevant here, a determination that no unusual circumstances preclude the juvenile's exercise of the right of self-representation). Some afford the right to a juvenile's parents. *See In Interest of R.D.B.*, 575 N.W.2d 420 (N.D. 1998) (a juvenile may waive the right to counsel if the juvenile is represented by his parents). And some statutorily exclude the right of self-representation from the panoply of due process rights afforded to juveniles in delinquency proceedings. *See* N.C. Gen. Stat. § 7B-2405(6) (2018) (The court shall protect "[a]ll

¶ 15    In Colorado, the juvenile court must appoint counsel for a juvenile in most circumstances.  However, the court may not appoint counsel if (1) the juvenile has retained his own counsel; or (2) the juvenile has made a knowing, intelligent, and voluntary waiver of his right to counsel.  § 19-2-706(2)(a); *see also* § 19-2-508(2.5), C.R.S. 2018.  While the right to counsel in a juvenile delinquency proceeding may be waived, the court is required to follow appropriate procedure to determine the validity of the waiver and to ensure that the waiver is voluntary, knowing, and intelligent.  *See* § 19-2-706(2)(c).

¶ 16    An adult's waiver of the right to counsel may be effective if the record shows that, under the totality of the circumstances, the defendant's conduct demonstrates an unequivocal knowing, intelligent, and voluntary intent to relinquish the right to representation.  *People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006).  A waiver is knowing and intelligent only when "the record clearly shows that the defendant understands the nature of the charges, the statutory offenses included within them, the range of allowable

---

rights afforded adult offenders except the right to bail, the right of self-representation, and the right of trial by jury.").

punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *People v. Arguello*, 772 P.2d 87, 94 (Colo. 1989). Because there is a strong presumption against finding a waiver of a constitutional right, a court has the duty of careful inquiry into the reasons given for not having counsel and the defendant's understanding of the many risks of self-representation. *Alengi*, 148 P.3d at 159.

¶ 17 Because "juveniles are presumed to have less capacity than adults to understand their rights and privileges," a court considering whether a juvenile's waiver of constitutional rights is effective must also consider, while applying a totality of the circumstances test, factors such as "the juvenile's age, previous court experience, education, background, intelligence, and capacity to understand the nature of his or her rights and the consequences of waiving those rights." *People v. Simpson*, 51 P.3d 1022, 1025, 1027 (Colo. App. 2001) (considering juvenile rights at a providency hearing), *rev'd on other grounds*, 63 P.3d 79 (Colo. 2003).

¶ 18 Although no Colorado decision expressly addresses a juvenile's waiver of counsel, we conclude that the protections afforded to a

juvenile must, at a minimum, be equivalent to those afforded to an adult defendant. Thus, failure to properly advise a juvenile and to inquire on the record into whether the juvenile demonstrates, under the totality of the circumstances, an unequivocal knowing, intelligent, and voluntary intent to relinquish the right to representation results in an invalid waiver of counsel. We do not require a showing of prejudice to reverse a delinquency adjudication when a juvenile's waiver of the right to counsel is ineffective. *See Arguello*, 772 P.2d at 97 (a deprivation of the right to counsel "undoubtedly taint[s] the whole trial").

¶ 19 The General Assembly further protected a juvenile's right to counsel through "An Act Concerning the Provision of Defense Counsel to Juvenile Offenders . . . ," which took effect in 2014. Ch. 247, 2014 Colo. Sess. Laws 948. Among many other statutory changes, section 19-2-706(1)(e) was added to specify that the failure of a juvenile's parent to apply for court-appointed counsel may not be construed as a waiver of the juvenile's right to counsel. *Id.* at 952. In section 19-2-706(2)(a)(II), the General Assembly restated the constitutional requirement that any waiver of counsel by a juvenile must be knowing, intelligent, and voluntary, and in section

19-2-706(2)(c), it supplemented the constitutional requirement by requiring a trial court to make particular findings before accepting a juvenile's waiver. *Id.* at 952-53; *see Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 492 (1982) ("[B]y legislation[,] the Congress[] may impart a new, and on occasion unique, meaning to [certain terms] in particular statutory or constitutional contexts.").

¶ 20    Pursuant to these sections, a court must make specific inquiries and findings on the record before accepting a juvenile's waiver of the right to counsel. The court may accept a juvenile's waiver

> *only after finding on the record, based on a dialogue conducted with the juvenile,* that:
>
> (I) The juvenile is of a sufficient maturity level to make a voluntary, knowing, and intelligent waiver of the right to counsel;
>
> (II) The juvenile understands the sentencing options that are available to the court in the event of an adjudication or conviction of the offense with which the juvenile is charged;
>
> (III) The juvenile has not been coerced by any other party, including but not limited to the juvenile's parent, guardian, or legal custodian, into making the waiver;

(IV) The juvenile understands that the court will provide counsel for the juvenile if the juvenile's parent, guardian, or legal custodian is unable or unwilling to obtain counsel for the juvenile; and

(V) The juvenile understands the possible consequences that may result from an adjudication or conviction of the offense with which the juvenile is charged, which consequences may occur in addition to the actual adjudication or conviction itself.

§ 19-2-706(2)(c) (emphasis added).[6]

¶ 21 The statute does not specify the remedy if the juvenile court fails to make specific inquiries and requisite findings on the record, but *Arguello* is instructive.  Even for adults, Colorado "require[s] that the trial court conduct a specific inquiry on the record to ensure that the defendant is voluntarily, knowingly and intelligently waiving the right to counsel." *Arguello*, 772 P.2d at 95.  The court further noted that failure to substantially comply with this requirement "does not automatically render the waiver invalid, but

---

[6] We note that the Juvenile Delinquency Benchbook, although last updated prior to the addition of section 19-2-706(2)(c), C.R.S. 2018, contains questions that the juvenile court should ask before accepting waivers from a juvenile.  William Alexander, *Juvenile Delinquency Benchbook* (updated Sept. 2013), https://perma.cc/CKF8-558X.

is an exception which should rarely be invoked." *Id.* at 96. And it specified that "before a reviewing court can find a valid implied waiver based on conduct, there must be ample, unequivocal evidence in the record that the defendant was advised properly in advance of the consequences of his actions." *Id.* at 97. When there is insufficient record evidence of a valid waiver of the right to counsel, the error is structural and requires reversal. *Id.*

### III. Standards of and Basis for Review

¶ 22    The People argue that we should not review this case because J.V.D. may only challenge his waiver of the right to counsel in a postconviction proceeding. *See Moore v. People*, 2014 CO 8, ¶ 3. Alternatively, the People argue that we should review only for plain error, because J.V.D. did not argue that his waiver was ineffective or that he had been inadequately advised at trial.

¶ 23    J.V.D. argues that we should review an ineffective waiver as a denial of his constitutional right to counsel — a structural error requiring reversal. We agree with J.V.D.

¶ 24    Though *Moore* (waived right to testify) and *People v. Walker*, 2014 CO 6 (waived right to a jury trial), might support an argument that a juvenile may not contest the validity of his waiver of the right

12

to counsel on direct appeal, we do not agree that those cases preclude our review. In those cases, the supreme court relegated the defendants' waiver challenges to postconviction proceedings because the challenges would likely require an inquiry "into facts that the defendant brings forward that are not contained in the direct appeal record." *Moore*, ¶ 17. Here, the juvenile court record fully demonstrates that J.V.D.'s waiver was ineffective because of the absence of advisement and express findings in the record. And when a challenge relies solely on the facts in the record, we can address waiver on direct appeal. *See People v. Janis*, 2018 CO 89, ¶ 27.

¶ 25 The requirement of a contemporaneous objection and application of plain error review to a juvenile's failure to effectively waive his own right to counsel and lack of advisement is illogical. *See Moore*, ¶ 18. The very premise of an ineffective waiver is that the juvenile may not understand the nature of the right or the consequences of waiving it, so to require the juvenile to object on this basis at trial makes little sense. *See id.*

¶ 26 We agree with J.V.D. that an invalid waiver of the right to counsel constitutes structural error. *See Arguello*, 772 P.2d at 97

13

(an invalid waiver of the right to counsel amounted to a Sixth Amendment violation that tainted the whole trial, could never be considered harmless, and rendered the conviction invalid). Accordingly, we do not agree with the People that the record requires a showing of prejudice.

¶ 27    We review de novo whether a waiver of counsel was effective as a mixed question of law and fact. *Alengi*, 148 P.3d at 159.

## IV. Discussion

¶ 28    Because juveniles "often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them," *J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011) (quoting *Bellotti v. Baird*, 443 U.S. 622, 635 (1979)), a court has an expanded duty of careful inquiry into a juvenile's understanding of his or her right to counsel before the court can find that a waiver is voluntary, knowing, and intelligent. A juvenile must benefit not only from the constitutional standards that apply to adults — (1) presumptions against a waiver; (2) advisement regarding the many risks of self-representation; and (3) inquiry into his or her understanding of those risks and the reasons for the requested waiver — but also from the statutory requirements of section

14

19-2-706(2)(c) — (4) an inquiry into the juvenile's maturity; (5) an inquiry into the juvenile's understanding that counsel will be provided regardless of a parent's or guardian's ability or willingness to do so; and (6) findings on the record. Findings on the record are also strongly suggested by *Arguello*. *See Arguello*, 772 P.2d at 95-96.

¶ 29    Substantial information in the record supports a finding that J.V.D.'s waiver was voluntary. J.V.D. asked to represent himself, never asked for an attorney, declined offers of a GAL appointment, and submitted letters to the court affirming that position. But we conclude that his waiver was not knowing and intelligent. *See id.* at 94 ("[E]ven if the choice to proceed *pro se* is 'voluntary,' the waiver is not valid until the court ensures that the waiver is made *knowingly* and *intelligently*.").

¶ 30    To be sure, J.V.D. was defiant and discourteous in court. He interrupted the court, the prosecutor, and his mother. He demanded answers to legal questions that were out of place in the proceedings. He attempted to testify and to make arguments during objections and cross-examination. We further note that he had prior experience with the juvenile system, and he gave the

court the impression that he was simply trying to prevent or delay the proceedings. We commend the juvenile court for its efforts in attempting to control the proceeding while respecting the rights of this obstreperous juvenile.

¶ 31 Nonetheless, we must conclude that J.V.D. was insufficiently advised. First, we see no evidence in the record that he was advised that the prosecution had entered a petition with felony charges. *See id.* The court did not explain the range of allowable punishments or the collateral consequences of a felony adjudication. *See id.*; *see also* § 19-2-706(2)(c)(II). It did not explain the risks of self-representation, beyond possibly receiving "bad advice." *See Alengi*, 148 P.3d at 159. And J.V.D. was not advised that counsel would be appointed regardless of his mother's ability or willingness to pay. *See* § 19-2-706(2)(c)(IV).

¶ 32 Moreover, the court did not assess J.V.D.'s education, background, or maturity before accepting his waiver of counsel. *See Simpson*, 51 P.3d at 1027; *see also* § 19-2-706(1)-(2). And it did not inquire into the reasons J.V.D. did not want counsel. *Alengi*, 148 P.3d at 159.

¶ 33    The People concede that the juvenile court did not make the inquiries and findings required by section 19-2-706(2). Indeed, the court's inquiry as it applies to the right to counsel was limited to that recounted above, and it did not make any findings on the record as to whether the juvenile's waiver of his right to counsel was voluntary, knowing, and intelligent. It did not assess the juvenile's maturity level, his understanding of the length of the possible sentence or the collateral consequences emanating from a felony juvenile adjudication, and it did not inquire whether he had been coerced in any way, all required by statute.

¶ 34    We cannot assume that the court made implicit findings that comport with the statute and render J.V.D.'s waiver constitutionally effective.

¶ 35    Considering the totality of circumstances, we conclude that J.V.D.'s waiver was invalid. It was not knowing and intelligent because he was insufficiently advised and did not appear to understand the nature of the proceedings or the risks of self-representation. Moreover, his waiver was ineffective because the juvenile court did not inquire into his maturity or make findings on the record.

17

## V. Conclusion

¶ 36    J.V.D.'s right to counsel for juvenile delinquency proceedings was violated when he was allowed to proceed in the absence of a knowing and intelligent waiver of that right.  Accordingly, we reverse his delinquency adjudication and remand for a new trial.

JUDGE NAVARRO and JUDGE WELLING concur.