The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Eugene Aloys **TAFOYA,** Defendant-Appellant.

No. 82CA0376.

Colorado Court of Appeals, Div. III.

April 25, 1985.

Rehearing Denied June 20, 1985.

664

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Eugene Aloys Tafoya, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of third degree assault and conspiracy to commit third degree assault. We affirm.

On October 14, 1980, Faisal Zagallai, a Libyan student at Colorado State University, was shot twice by defendant, who was posing as a representative of a large computer company. Defendant was not connected to the crime until the F.B.I. identified a gun found in an irrigation ditch on February 8, 1981, as belonging to the defendant. The F.B.I. informed Fort Collins Police Department detective Martinez on April 10, 1981, of the link. After further investigation, including Zagallai's identification of defendant after a photographic line-up, detective Martinez obtained an arrest warrant and a warrant to search defendant's residence. Both of these warrants were executed on April 22, 1981.

On September 29, 1981, after his incarceration and retention of counsel, defendant requested to speak with detective Martinez. After signing a written waiver of his *Miranda* rights, defendant discussed his bond, the possibility of his testifying before a U.S. Senate committee investigating terrorism, and facts pertaining to the state's case against him.

Defendant's trial was accompanied by extensive local and national publicity centering on his claimed connections with the C.I.A. and the government of Libya. During the trial the press reported rumors of the possibility of Libyan "hit squads" attacking high-ranking American politicians. In response to this publicity and to the rumors of possible violence against defendant, extraordinary security measures were ordered, and the trial court instructed the jurors, who were not sequestered, to avoid news releases.

I.

Defendant first asserts that the trial court erred in denying his motion to suppress evidence seized in the search of his home, arguing that the affidavit in support of the search warrant was based on stale information and did not set forth sufficient facts to support the belief that the evidence of criminal activity was located on the premises to be searched. We disagree.

■ The passage of time between the commission of a crime and a search warrant application is not the sole criterion to be applied in considering the staleness of a search. Rather, the court must consider the elapsed time between the date the police had probable cause to secure a warrant and the date the warrant was issued. *People v. Thrower*, 670 P.2d 1251 (Colo.App. 1983).

■ The police did not identify defendant as a suspect until April 10, 1981. The search warrant was executed on April 22,

1981. Thus, only twelve days had elapsed between defendant's connection with the shooting and the execution of the search warrant. Because of the proximity between these two events, we conclude that the search warrant was not based on stale information. *See People v. Cullen,* 695 P.2d 750 (Colo.App.1984).

## II.

Defendant next contends that his right to counsel was infringed upon when he made statements to the police during his incarceration and after retention of counsel. We disagree.

■ The general rule is that statements will be admitted after retention of counsel where (1) the accused initiates the conversation; (2) there is a valid waiver of the right to counsel and the right to remain silent, and (3) the defendant's statements were voluntary. *See People v. Pierson,* 670 P.2d 770 (Colo.1983).

■ Here, defendant initiated the conversations to discuss the amount of his bond and the possibility of his testifying before a U.S. Senate committee investigating terrorism. Both of these topics were significantly linked to the issues in his own case. Further, the record supports the trial court's findings that defendant's waiver of his rights and his subsequent statements were voluntary. *See People v. Thorpe,* 641 P.2d 935 (Colo.1982).

## III.

Defendant further argues that the trial court erred in refusing to grant a change of venue because of excessive publicity.

■ A defendant, in order to prevail on this argument, must show that the publicity was so "massive, pervasive, and prejudicial" as to create a presumption of an unfair trial, or alternatively, that the publicity created actual hostility on the part of the jurors. *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983).

■ Defendant has failed to meet this burden. The record shows that the trial court allowed extensive *in camera* voir dire and gave cautionary remarks to the jury concerning avoidance of publicity. Moreover, defendant failed to exhaust his preemptory challenges. Therefore, we find no abuse of discretion by the trial court in denying defendant's motion for change of venue. *People v. Simmons,* 183 Colo. 253, 516 P.2d 117 (1973).

## IV.

Defendant next contends that the "armed camp" atmosphere of his trial robbed him of the presumption of innocence.

■ A defendant has the right to be free from excessive guards except where special circumstances dictate the use of enhanced security measures. *Dorman v. U.S.,* 140 U.S.App.D.C. 313, 435 F.2d 385 (D.C.Cir.1970). The determination whether such special circumstances exist is within the trial court's discretion. *People v. Dillon,* 655 P.2d 841 (Colo.1982).

■ Here, threats upon the defendant's life and the possibility of terrorist acts necessitated the extensive security measures. Furthermore, once defendant voiced objections to the security precautions, the extra security was concealed from the jury as much as possible. Therefore, we conclude that the trial court did not abuse its discretion.

## V.

The defendant next contends that the court erred in not polling the jury concerning whether the jurors had been exposed to publicity regarding the alleged Libyan assassination squads.

■ Mere speculation by a defendant that the jurors read and were prejudiced by unfavorable news articles does not constitute a basis for reversal, and a defendant bears the burden of showing that prejudice occurred. *People v. Davis,* 39 Colo.App. 63, 565 P.2d 1347 (1977).

■ Here, the trial court amended its instructions concerning the avoidance of publicity by the jurors to include news re-

lating to the Libyan assassination squads. Once such instructions were given, it is presumed that they were followed by the jurors. *Tomsak v. People*, 166 Colo. 226, 442 P.2d 825 (1968). There being nothing in the record but speculation regarding this issue, we conclude that defendant failed to meet his burden of showing the jurors were prejudiced by the news accounts.

## VI.

Defendant finally argues that, even though he was represented by private counsel, he was indigent, and was therefore entitled to public funds for expert investigators and for the processing of out-of-state subpoenas. We disagree.

An indigent defendant is entitled to the basic "tools of an adequate defense." *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). *See also* § 18–1–402, C.R.S. (1978 Repl.Vol. 8). However, a trial court's discretionary refusal to grant an indigent defendant's request for investigatory or other services will be upheld absent a showing that the services sought were reasonable, necessary, and helpful to the defense. *Brown v. District Court*, 189 Colo. 469, 541 P.2d 1248 (1975).

Here, defendant has failed to make a satisfactory showing that the trial court abused its discretion. There was no finding that the defendant was indigent. Moreover, in analyzing the theories toward which defendant would have applied the requested funds, we have determined that either the theories were rendered moot by the jury's acquittal of defendant on various counts or the theories dealt with issues which were irrelevant or uncontested. Accordingly, the trial court's refusal to grant defendant's request was a proper exercise of its discretion.

The judgment is affirmed.

STERNBERG and TURSI, JJ., concur.