In re The PEOPLE of the State of Colorado, Plaintiff,

v.

Benjamin CARDENAS, Defendant.

No. 02SA236.

Supreme Court of Colorado.

Nov. 18, 2002.

Rehearing Denied Jan. 13, 2003. *

Mark T. Adams, District Attorney R. Jason Richards, Deputy District Attorney Sterling, Colorado, for the Plaintiff.

Janet D. Zimmerman Sterling, Colorado, for Defendant.

JUSTICE RICE delivered the Opinion of the Court.

This original proceeding under C.A.R. 21 arises out of a criminal case currently pending in Logan County Court. The issue is whether the state must appoint, at its own expense, an interpreter to serve as a private translator for out-of-court discussions between a defendant and his pro bono attorney. We hold that the trial court did not abuse its discretion in refusing to appoint an interpreter for the Defendant under the circumstances of this case.

## I. FACTS AND PROCEDURAL HISTORY

Defendant, Benjamin Cardenas, pled guilty in Logan County Court to one count of driving under the influence (DUI) and is currently awaiting sentencing. At the time his plea

* Justice HOBBS and Justice MARTINEZ would    grant the Petitions.

was taken, he was not represented by an attorney. However, when his case came before the court for sentencing, Janet Zimmerman, representing the Defendant pro bono, entered her appearance on his behalf.[1]

Defendant is a Spanish-speaker who speaks no English. Because Ms. Zimmerman speaks no Spanish, she has been unable to have any substantive communication with her client. Her only information regarding the case was derived from her discussions with one of Defendant's friends, who apparently speaks some English.

At the sentencing hearing, Zimmerman notified the court of her belief that Defendant's guilty plea was coerced by the state and was therefore involuntary. However, because of the language barrier between herself and Defendant, she could not learn sufficient details about the case in order to determine whether Defendant's plea should be withdrawn. Rather than hire and pay for an interpreter in order to assist her in investigating the circumstances surrounding Defendant's plea, Zimmerman requested that the trial court appoint, at state expense, an interpreter to serve in that capacity. The trial court denied Zimmerman's request. The court, however, continued the sentencing date and arranged for an interpreter to be present at the next hearing solely for the purpose of translating the in-court proceedings. Defendant filed a petition pursuant to C.A.R. 21 and this court issued a rule to show cause. We now discharge the rule.

## II. ANALYSIS

█ The issue in this case is the narrow question of whether the trial court abused its discretion in failing to provide, at state expense, a private interpreter to translate out-of-court discussions between Defendant and his pro bono attorney. We conclude that the answer is no.

█ Defendant relies on section 18–1–403, 6 C.R.S. (2002), in support of his argument that out-of-court interpreting services must be provided. In that section, the General Assembly expressed its intention to provide indigent defendants with legal representation at state expense:

> [A]ll indigent persons who are charged with or held for the commission of a crime are entitled to legal representation and supporting services at state expense, to the extent and in the manner provided for in articles 1 and 2 of title 21, C.R.S.

§ 18–1–403, 6 C.R.S. (2002).[2] In Defendant's view, because the cost of legal representation is being supplied pro bono by Ms. Zimmerman, the state need only pay for the cost of "supporting services," namely, the cost of a private interpreter. Without an interpreter, Defendant argues that Zimmerman will be unable to provide adequate and competent representation and he will therefore be deprived of his constitutional right to the assistance of counsel.

Defendant is correct in his assertion that all defendants have a fundamental right to be represented by counsel during criminal prosecution, and that indigent defendants are entitled to have counsel appointed at the expense of the state. *See* Colo. Const. art. II, § 16; *Allen v. People,* 157 Colo. 582, 404 P.2d 266 (1965); U.S. Const. amend VI; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Although indigent defendants are entitled to state-paid legal representation and supporting services, Defendant fails to notice the last phrase in section 18–1–403 which provides that such representation is only, "to the extent and in the manner provided for in

**1.** Ms. Zimmerman initially told the court that she was entering only a "conditional appearance," and that her further involvement would be conditioned on the appointment of a translator. The court stated that it would not accept a conditional or limited appearance and therefore Ms. Zimmerman entered her general appearance as counsel for Defendant.

**2.** We note that there has been no finding in this case that Defendant is, in fact, indigent. Pursuant to section 21–1–103(3), 6 C.R.S. (2002), upon application by a defendant, the public defender's office must make a finding that a defendant is indigent before a defendant is entitled to representation by the public defender. The Defendant, who has been declared to be indigent in an unrelated case currently pending in Logan County District Court and who is represented by the public defender in that case, did not apply for representation by the public defender in this case.

articles 1 and 2 of title 21, C.R.S." § 18-1-403, 6 C.R.S. (2002). The General Assembly has created an agency charged with providing legal representation and services to indigent defendants: the office of state public defender. *See* § 21-1-101 to -106, 6 C.R.S. (2002). Pursuant to section 21-1-103(3), 6 C.R.S. (2002), the public defender's office, upon application from a defendant, is required to make a determination that the defendant is indigent before he may obtain the services of that office.

■■■■■ In this case, Defendant has not applied for the services of the public defender. Instead, he chose to be represented by Ms. Zimmerman. While an indigent defendant has the right to legal representation and supporting services at state expense, he does not have the right to pick the attorney of his choice. *See People v. Coria,* 937 P.2d 386 (Colo.1997); *People v. Shook,* 186 Colo. 339, 527 P.2d 815 (1974); *Valarde v. People,* 156 Colo. 375, 399 P.2d 245 (1965). If Defendant wants the state to pay the costs of his attorney and supporting services, his only choice is to be represented by the public defender, or in the case of a conflict, a state-appointed alternate defense counsel. *See* § 21-2-101 to -106, 6 C.R.S. (2002). While he certainly has a right to be represented by Ms. Zimmerman, the state is not obliged to pay the costs of that representation.

■■■■ In addition, Defendant points to Chief Justice Directive 90-01 (amended Aug. 16, 2001), to support his view that the trial court should have appointed a translator. Chief Justice directives represent an expression of Judicial Branch policy, to be given full force and effect in matters of court administration. *See Office of the State Court Adm'r v. Background Info. Servs., Inc.,* 994 P.2d 420, 431 (Colo.1999). Defendant reads directive 90-01, an expression of policy regarding the hiring of interpreters, much more broadly than we do. Pursuant to the directive, the only situation in which the appointment of a state-paid interpreter is mandatory is for translation of in-court proceedings. The directive, we conclude, does not require the

trial court to appoint a private interpreter under the facts of this case.

We encourage lawyers to engage in pro bono representation of indigent defendants. However, we have found no statute or case which would lead us to conclude that the trial court abused its discretion in refusing to appoint an interpreter for the Defendant.

## III. CONCLUSION

The trial court did not abuse its discretion in refusing to appoint a private interpreter for Defendant. Accordingly, the rule to show cause is discharged.

Justice HOBBS dissents and Justice MARTINEZ joins in the dissent.

Justice HOBBS, dissenting:

I respectfully dissent. Our rule to show cause required briefing and response on the following question:

> Whether the county court *has discretion* to appoint a translator for an indigent client who is represented by a pro bono attorney in a criminal case.[1] (emphasis added).

In my view, the county court erred in determining that it did not have discretion to appoint an interpreter to assist Cardenas in communications with his pro bono attorney.

When Cardenas entered his guilty plea, he was without the assistance of counsel. The only interpreter available to him in the guilty plea proceeding was a law enforcement employee. Recognizing a factual and legal basis for a possible withdrawal of the guilty plea, attorney Janet Zimmerman volunteered to represent Cardenas if she could have the services of a certified translator to help with privileged attorney-client communication. The county court permitted her general appearance but determined that it lacked authority to provide Cardenas and his pro bono counsel the services of an out-of-courtroom interpreter.

Rather, the county court ruled that the public defender's office is obligated to repre-

---

1. The Majority rephrases the question to state: "whether the state *must* appoint, at its own expense, an interpreter to serve as a private translator for out-of-court discussions between a defendant and his pro bono attorney." *See* maj. op at ——. (emphasis added).

sent indigent persons; that the county court cannot make a determination of indigency independent of the public defender's office; that defendant cannot choose his counsel and then require the court to pay for that attorney; and there is no legal authority requiring the court to furnish interpreters or other experts to assist an attorney in making a determination whether the attorney will represent a potential client.

When attorney Zimmerman sought to confer with Cardenas in the courthouse hallway, the judicial district's administrator rebuked Zimmerman through a letter which stated that "The Judicial Department pays for *in-court* language interpreting. . . . As a convenience to the interpreter and to eliminate additional tracking of time for a few minutes, a hallway plea bargain *that interrupts court proceedings* is also paid through mandated costs." (emphasis in original letter).

The Majority opinion states that the trial court did not abuse its discretion in denying the services of an additional translator. *See* maj. op. at 623, 625. However, the county court did not reach the stage of exercising its discretion, because it ruled that it had no discretion to allow interpreter services at state expense, other than in-court translation. The record demonstrates that both the county court and the court administrator believed that courts lack such discretion. Because the applicable Chief Justice Directive permits the court to provide the additional interpreter at state expense, we should remand this case so that the county court may exercise its discretion under informed standards, allowing the county court to (1) determine the question of indigency and (2) whether to provide interpreter services to Cardenas and his pro bono counsel or require Cardenas to apply for public defender representation in order to gain translation assistance at state expense.

## A. Chief Justice Directive 90–01 Allows for An Additional Interpreter When Defendant Is Represented Pro Bono

Chief Justice Directive 90–01 plainly allows—but does not require—the county court

to determine the question of indigency for purposes of providing additional interpreter services, beyond the in-courtroom interpreter:

> The court *may appoint*, at state expense, *an additional interpreter for any party to a court case* when there is a *finding of indigency* as to that individual. (See 13–90–114 C.R.S.)(See also Colorado Judicial Department Fiscal Procedures Ch. 17.2).

Chief Justice Directive 90–01, Section 2, as Amended 8/16/01 (emphasis added). The statutory reference in the parenthetical language of the rule is to the duty of the state court administrator to audit the accounts of the interpreter. *See* § 13–90–114, 5 C.R.S. (2002). This directive makes no distinction between criminal and civil cases in regard to additional interpreter services.[2]

The directive does not prohibit a court from determining that a person is indigent and needs the interpreter's services; to the contrary, the directive's wording assumes that courts have such authority. This is consistent with our case determinations. We have previously held that a county court has the authority to make determinations of indigency apart from the public defender's decision regarding indigency when a person seeks representation by that office. *See Rodden v. Colo. State Penitentiary*, 52 P.3d 223 (Colo.2002) (county court had authority to determine indigency and its ruling that the incarcerated person was indigent precluded requiring an appeal bond).

In my view, Chief Justice Directive 90–01 allows the county court the discretion it thought it lacked. The directive provides plainly that (1) the court "may appoint more than one interpreter in any one case," and (2) the court "may appoint, at state expense, an additional interpreter for any party to a court case when there is a finding of indigency as to that individual." Chief Justice Directive 90–01, Section 2, as Amended 8/16/01. In juxtaposition, the directive provides that the cost of an additional interpreter may be

---

**2.** The directive requires the appointment of in-court interpreter services in criminal and juve-

nile cases.

assessed against a non-indigent party to the case, as a court cost:

> In instances where there is no finding of indigency, the court may appoint an additional interpreter whose fees may be considered court costs pursuant to statute and may be assessed to parties in the case.

*Id.*

When read in its entirety, this Chief Justice Directive assigns to the court the determination of whether the costs of an additional interpreter ought to be charged to a party or not depending on whether the party is indigent. The court should make that determination of indigency consistent with section 13–16–103, 5 C.R.S. (2002) and Chief Justice Directive 98–01, Section II, as Revised 6/1/98. *See Walcott v. Dist. Court,* 924 P.2d 163, 167 (Colo.1996).

### B. Pro Bono Services

Colorado attorneys have a professional responsibility not to refuse the cause of the defenseless or oppressed.

> I will never reject, from any consideration personal to myself the cause of the defenseless or oppressed.

Oath of Admission, Colorado Supreme Court, sixth clause. Colo. RPC 6.1 states an aspirational goal of 50 hours per year per attorney in pursuit of this responsibility. Nothing in Colo. RPC 6.1 states that the "persons of limited means" who would benefit from this representation cannot be a criminal defendant. *See* Colo. RPC 6.1(a)(1).

Nor is a county court prohibited from accepting the appearance of a pro bono attorney in a criminal case because interpreter services would be required. The county court need not accept such an appearance, because the indigent person is not entitled to representation by a particular attorney, but it has discretion to do so. The county court, in the case before us, so recognized by entering attorney Zimmerman's appearance. But, the court labored under the mistaken impression that it had no authority to make a determination of indigency and provide the out-of-courtroom interpreter service attorney Zimmerman might need to effectively represent Cardenas.

The result of the county court's ruling is that attorney Zimmerman must pay for the interpreter services if she wishes to represent Cardenas pro bono. Such a holding deters rather than encourages pro bono representation.

This court has actively encouraged pro bono representation of indigent defendants. *See* Colo. RPC 6.1; Justice Rebecca L. Kourlis & Judge Daniel M. Taubman, *Changes to Code of Judicial Conduct Allow Judges to Support Pro Bono Legal Services,* 29 Colo. Law. 41 (May 2000). Judges have a special opportunity and obligation to use their positions to provide access to our justice system, and, in that vein, they have an obligation to use the court's administrative tools to develop a court culture that is supportive of pro bono service. *Id.*

Allowing the state to pay costs, in conjunction with pro bono attorney time, as a matter of economic reality would encourage attorney participation in pro bono service. Pro bono representation envisions providing legal services without compensation, but not necessarily at high individual expense to the attorney. When an attorney provides pro bono service, she demonstrates a commitment to the public interest. When private counsel agrees to represent an indigent defendant, the burden and financial cost is taken off the state public defender's office. Allowing *indigent* defendants to receive support services, at the state's expense, even when they are represented by private counsel, encourages counsel to provide the service and saves the state the cost of attorney's fees.

Nothing in our statutory law prohibits state funded translation services to support indigent defendants who proceed with private pro bono counsel. Further, allowing an indigent defendant to have interpreter services, paid for by the state, would not give the defendant the right to choose any counsel and then charge the state for the representation. The state would not be responsible for the attorney's fees. An indigent defendant would still be required to obtain state paid attorney representation through the public defender's office. The decision that the state will not pay attorney's fees for an indigent's counsel of choice does not require that sup-

port services be governed by the same rationale as attorney services paid for by the state. Furthermore, state funded support services for indigent defendants would be controlled by the standard of necessity for an adequate defense.

## C. Remand Would Allow County Court to Exercise Its Discretion

Consistent with the attorney's oath of office and pro bono aspirational rule, I conclude that we should remand this case to the county court, so that it may determine whether out-of-courtroom certified interpreter services will aid the just resolution of the case before the court. The court could first proceed with the in-courtroom interpreter to determine whether Cardenas would benefit from attorney Zimmerman's representation and the services of an additional interpreter. If so, it could make the appointment of the additional interpreter. If not, it could decline to do so.

The underlying issue in this case appears to be whether Cardenas has a basis for withdrawing his guilty plea. Cardenas was initially charged with driving under the influence, driving under the influence per se, and two other traffic charges in an incident on February 25, 2002. Because Cardenas' blood test failed to show a positive result for the illegal substances tested, the district attorney's office filed a motion to dismiss, and the Court subsequently dismissed the DUI and DUI per se charges. However, during the first appearance on the traffic offenses on May 22, 2002, the court granted the district attorney's motion to amend the charges against defendant to include a driving under the influence of drugs (DUID) charge. The defendant was persuaded to plead guilty to that DUID charge in return for a dismissal of all remaining charges and a suspension of jail as a condition of probation. Probation was to last a period of two years.

Defendant was without representation during his plea, and it is unclear whether the public defender would have assisted Cardenas in his guilty plea because his jail sentence was suspended.[3] Sally Torres, who

provided interpretation during the guilty plea proceedings was uncertified as an interpreter, was a witness against Cardenas in another pending district court case, and is employed by the Victim's Assistance Coordinator for the Logan County Sheriff's Office. Undoubtedly, Torres could not be considered a neutral facilitator to aid Cardenas' understanding of his choices and their implications.

I would require the county court to exercise its discretion. The county court could determine whether Cardenas is indigent and whether to provide the services of an additional interpreter, in accordance with the Chief Justice Directive, for the purpose of permitting Cardenas to proceed with the assistance of pro bono counsel in deciding whether to move to withdraw his plea or proceed to sentencing. In the alternative, the county court could determine that Cardenas must apply to the public defender's office for representation if he wants out-of-court interpreter assistance at state expense.

Contrary to the county court's assumption, section 21–1–103(3), 6 C.R.S. (2002), providing for the public defender to make a determination of indigency, does not preclude the court's discretion to proceed under the directive. Section 18–1–403, 6 C.R.S. (2002), and case precedent provide for the exercise of court discretion in providing state funded services to indigent defendants.

Section 18–1–403 states that all indigent persons charged with a crime are entitled to legal representation *and* supporting services at state expense. § 18–1–403, 6 C.R.S. (2002). If legal representation necessarily included all supporting services and no services outside the public defender's office are available, the General Assembly's inclusion of the word "and" is superfluous. When an indigent defendant is represented by the public defender's office, the court still has the authority and responsibility *to withhold or grant* supporting services. The right to supporting services, such as an expert, at the state's expense is not dependent on representation by the public defender.

---

**3.** Section 16–5–501, 6 C.R.S. (2002), provides that when a prosecuting attorney does not seek incarceration as part of a penalty, legal representation need not be provided at state expense.

In my view, the Majority too narrowly construes a court's authority to provide interpreter services to an indigent client represented by a pro bono counsel. A state must provide an indigent defendant with the basic tools to present an adequate defense. *Rojem v. Gibson*, 245 F.3d 1130, 1139 (10th Cir.2001) (citing *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). Communication between the attorney and client is integral for effective assistance. Recently, the court of appeals in *People v. Ochoa–Magana*, 36 P.3d 141 (Colo.App.2001), acknowledged that the lack of an interpreter to assist a non-English speaking defendant in attorney-client communication can impair the constitutional right to effective assistance of counsel. *Id.* at 143. Indeed, effective assistance of counsel is impossible unless the client can provide his or her lawyer with intelligent and informed input. *United States v. Mosquera*, 816 F.Supp. 168 (E.D.N.Y.1993).

A three factor test applies to whether a specific service is necessary for an adequate defense including: (1) the effect on the private interest in the accuracy of the trial if the service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and risk of error in the proceeding if the service is not provided. *Rojem*, 245 F.3d at 1139. The focus of the test is on whether the indigent defendant will be able to present an adequate defense without the service, not whether the defendant has chosen to be represented by the public defender, proceed pro se, or retain private counsel on a pro bono basis.

A court's determination of whether supporting services should be provided at the state's expense depends on the necessity of the service, no matter who represents the defendant. *See Matthews v. Price*, 83 F.3d 328, 335 (10th Cir.1996) (indigent defendant, represented by private counsel, is entitled to state appointed expert only if he shows such services are necessary to an adequate defense); *Brown v. Dist. Court*, 189 Colo. 469,

541 P.2d 1248 (1975) (court denied indigent defendant's request for appointment of an expert because he failed to show the services sought were necessary; defendant was represented by the public defender); *People v. Garcia*, 981 P.2d 214, 218 (Colo.App.1998) (indigent defendant, represented by the public defender, requested state funds to hire an expert, the court denied the request because the defendant failed to show the services of the expert were necessary); *People v. Tafoya*, 703 P.2d 663, 667 (Colo.App.1985) (defendant, represented by private counsel, requested investigatory services at the state's expense, the court denied the request because there was no finding the defendant was indigent or the services were necessary).

None of these cases base the determination of whether the state should provide the indigent defendant with support services on who represents the defendant. The decision of whether to appoint an interpreter, at state expense, under the discretionary provision of the Chief Justice Directive, should be premised on whether the services requested are necessary to an adequate defense and effective assistance of counsel. In this case, Cardenas was unable to speak with his counsel because he did not speak English and she did not speak Spanish. Consequently, counsel stated that she could not determine if Cardenas' guilty plea was voluntary. Without a translator, the risk of error was great. In contrast, the burden on the state of providing the additional interpreter service to Cardenas is minimal and the state's interest in encouraging pro bono representation is great.

Accordingly, I respectfully dissent.

I am authorized to state that Justice MARTINEZ joins in this dissent.