The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Ermulo Enriquez OROZCO,
Defendant–Appellant.

No. 06CA1533.

Colorado Court of Appeals,
Div. III.

Feb. 5, 2009.

Rehearing Denied April 30, 2009.

John W. Suthers, Attorney General, Christopher Y. Bosch, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Ermulo Enriquez Orozco, appeals the judgments of conviction entered on jury verdicts finding him guilty of incest and sexual assault on a child. We reverse and remand for a new trial.

According to the prosecution's evidence, defendant grabbed his thirteen-year-old nephew, R.O., and forced him into a bedroom, where he made him remove his clothes. Defendant then removed his own clothes, forced R.O. to engage in mutual masturbatory activity, put his penis in R.O.'s mouth, and then inserted his penis into R.O.'s anus. After showering, R.O. left the house to find his older brother and tell him what happened. The older brother returned to the home, confronted defendant, and called the police, whereupon defendant left the scene.

R.O. was taken to the hospital, where, although one doctor found no evidence of physical trauma to R.O.'s anal region, another doctor observed a small, non-bleeding tear in R.O.'s anus. R.O. made a number of statements to others about where and how the assault occurred. These statements were admitted, along with his testimony, at trial.

Defendant's theory of defense was that R.O. had not been sexually assaulted. Among other things, he noted that (1) although R.O. reported to a victim's advocate that he had ejaculated onto the bed, the police found no trace of semen on the bed; and (2) there was no unambiguous physical evidence indicating that a sexual assault had occurred.

Defendant moved to have the state pay the fees of an expert investigator who would have testified that, under the circumstances reported by R.O., there should have been other physical evidence of a sexual assault. The trial court denied defendant's motion and the expert did not testify.

To prove defendant's intent and motive for the present offenses, the prosecution presented evidence that defendant had previously sexually assaulted two other children.

The jury found defendant guilty as charged, and the trial court sentenced him to concurrent terms of eight years to life imprisonment for sexual assault on a child and four years to life imprisonment for incest.

## I. Denial of Funds for Defense Expert

Defendant contends that the trial court abused its discretion in denying his motion for funds to hire an expert who would have testified about the likelihood of physical evidence being present if R.O. was sexually assaulted as he said he was. We agree.

### A. Factual Background

In his motion, defendant asserted that (1) he qualified for and was initially represented by the Public Defender's Office; (2) his sister had retained private counsel on his behalf; (3) although he was currently represented by private counsel, his sister could no longer afford his attorney; (4) he was indigent; and

(5) an expert would be reasonably necessary to his defense because, without one, his attorney would be unable to effectively represent him or counter expert testimony he expected the prosecution to present at trial.

At the hearing on the motion, defendant, through counsel, argued that the expert was the crux of his defense because his case hinged on the lack of physical evidence to substantiate R.O.'s claim. The trial court found that it had no reason to doubt that defendant was indigent, and that defendant's request was reasonable: "[The proffered expert evidence] would be relevant and material. It goes to the ability of [defendant] to present a defense." Nonetheless, the court denied defendant's motion, reasoning:

> [T]he State's constitutional obligation to assist is really all one hundred percent put into the umbrella of the public defender's office. If the public defender has a client and they choose to do so, there's a limited pot of money to pay investigators. But it's also my understanding, not just that it's discretionary, but that there is, in fact, no money other than that. That is judicial doesn't have any money. There's no other branch of government or place where the money could come from.
>
> Essentially if I entered this order, there's no way to pay the expert because the PD's office isn't going to pay it for obvious reasons. He's not their client. The courts don't have the money without stealing it from some other line item in their budget. It's just not doable as I understand it.

Subsequently, defendant endorsed the investigative expert as a witness. In an offer of proof, defendant stated that the expert would testify (1) about the evidence he would have expected to find in an assault case involving anal penetration; (2) that, here, the collection and processing of the evidence was inadequate and did not adhere to police standards; and (3) about what trace evidence should have been present in a case like this. Over the prosecution's objection, the trial court ruled that this evidence would be relevant and admissible. Defendant did not, however, call the expert to testify during trial.

### B. Analysis

An indigent defendant is entitled to the basic "tools of an adequate defense." *People v. Tafoya,* 703 P.2d 663, 667 (Colo. App.1985) (quoting *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971)). However, "[g]ranting or denying a motion for supporting services to an indigent defendant lies within the sound discretion of the trial court." *People v. Garcia,* 981 P.2d 214, 218 (Colo.App.1998).

A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *People v. Muniz,* 190 P.3d 774, 781 (Colo. App.2008).

A court abuses its discretion in refusing to grant an indigent defendant's request for support services when the defendant shows that the requested services are reasonable, necessary, and helpful to the defense. *See Tafoya,* 703 P.2d at 667 ("a trial court's discretionary refusal to grant an indigent defendant's request for investigatory or other services will be upheld absent a showing that the services sought were reasonable, necessary, and helpful to the defense"); *see also Brown v. Dist. Court,* 189 Colo. 469, 470–71, 541 P.2d 1248, 1249 (1975) ("The trial court did not abuse its discretion by denying a motion for appointment of experts when no showing was made that the services sought by the defendant were reasonable, necessary, or in any way helpful to her defense."); *People v. Mossmann,* 17 P.3d 165, 171 (Colo. App.2000) ("where the defendant cannot show that such services are reasonable, necessary, or in any way helpful to the defense, the trial court is not required to grant a motion requesting such services").

Here, the trial court effectively determined that defendant had made the requisite showing to obtain state-funded expert witness services. However, the court denied the request because, in its view, no mechanism existed under the law to provide the necessary funds. The court was mistaken.

Section 18–1–403, C.R.S.2008, addresses legal assistance and support services for indigent defendants. In *People v. Cardenas,* 62 P.3d 621, 622–23 (Colo.2002), the supreme court held that, under section 18–1–403, "[i]f [d]efendant wants the state to pay the costs of his attorney and supporting services, his only choice is to be represented by the public defender, or in the case of a conflict, a state-appointed alternate defense counsel."

If section 18–1–403 encompassed all of the authority on the subject, we would have to affirm the trial court's ruling. However, it does not.

Chief Justice Directives represent an expression of Judicial Department policy, to be given full force and effect in matters of court administration. *Cardenas,* 62 P.3d at 623.

In *Cardenas,* the supreme court considered and rejected the argument that Chief Justice Directive (CJD) 90–01 required the appointment, at state expense, of a particular type of support service (that is, a private interpreter to effectuate attorney-client communications between an indigent defendant and a pro bono attorney). Here, we are concerned not with CJD 90–01, but with a different Chief Justice Directive.

At the time of defendant's trial, CJD 04–04 § IV provided, in pertinent part:

D. *Court Costs of Indigent Party Not Appointed Counsel*

In certain circumstances, a defendant's costs may be paid by the Judicial Department even though the defendant is not being represented by state-funded counsel (i.e., Public Defender; Alternate Defense Counsel; Judicial-paid counsel). Payment by the local court is appropriate if any of the following statements apply:

. . . .

c) The defendant is receiving private counsel but becomes indigent during the course of the case, and the court has determined that there are insufficient funds to pay for court costs, and that it would be too disruptive to the proceedings to assign the Public Defender or Alternate Defense Counsel to the case.

CJD 04–04 § IV was amended, effective July 1, 2008. However, the amendments did

not change the substance of the provision, as it applies here.

■ Under CJD 04–04 § IV, a court may order payment of Judicial Department funds for support services to an indigent defendant even where, as here, the defendant is represented by a private attorney. Thus, the trial court in the present case misunderstood its authority in ruling to the contrary.

Under CJD 04–04 § IV(D)(c), payment from the Judicial Department's budget is appropriate when (1) the defendant becomes indigent during the course of the case; (2) there are insufficient funds to pay for the costs; and (3) assigning the public defender or alternate defense counsel would be too disruptive to the proceedings.

Here, the trial court accepted that defendant had become indigent in the course of the case and that there were insufficient funds with which to hire an expert. And, although the trial court did not make a finding that appointing either a public defender or alternate defense counsel would be disruptive to the proceedings, the People do not dispute that point on appeal.

Because defendant made the requisite showing under the *Tafoya–Brown* line of cases for obtaining state-funded support services, and because the trial court denied defendant those services only because it erroneously concluded it had no authority to fund those services, we necessarily conclude that the trial court abused its discretion in denying defendant funding for his proffered expert testimony.

■ Defendant asserts, and the prosecution agrees, that the erroneous denial of state funding for a defense expert for an indigent defendant is subject to a constitutional harmless error analysis. *See People v. McCrary,* 190 Colo. 538, 547, 549 P.2d 1320, 1327 (1976) (where a defendant makes proper showing for state funded support services, denial of request may deprive defendant of due process or equal protection); *cf. Ake v. Oklahoma,* 470 U.S. 68, 74, 105 S.Ct. 1087, 1091, 84 L.Ed.2d 53 (1985) (when there has been a preliminary showing that an expert's testimony is likely to be significant at trial, the Constitution requires that the state provide the defendant access to an expert's assistance if he or she cannot otherwise afford one).

■ Under constitutional harmless error analysis, reversal is required unless the error was harmless beyond a reasonable doubt. *People v. Allen,* 199 P.3d 33, 37 (Colo.App.2007). "If there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be harmless beyond a reasonable doubt." *People v. Trujillo,* 114 P.3d 27, 32 (Colo.App.2004). Conversely, an error "is harmless beyond a reasonable doubt 'if there is no reasonable possibility that it affected the guilty verdict.'" *People v. Chavez,* 190 P.3d 760, 765 (Colo.App.2007) (quoting, in part, *Arteaga–Lansaw v. People,* 159 P.3d 107, 110 (Colo.2007)).

■ Here, the prosecution asserts that the error was harmless beyond a reasonable doubt because defendant was able to cross-examine several prosecution expert witnesses about the lack of physical evidence and the type of investigation conducted in this case. We are not persuaded.

In support of its argument, the prosecution points to several admissions from prosecution witnesses of facts key to defendant's defense theory. However, a review of the testimony upon which the prosecution relies reveals that the witnesses frequently added interpretations or explanations to those facts in a manner that diminished their importance. For example, one emergency room doctor testified that, although she did not find any sperm, fibers, or fecal matter on R.O., as one might expect to find in a sexual assault involving anal penetration, she would not expect to find such evidence in this case because R.O. had showered prior to his examination. In short, while the admissions upon which the prosecution relies allowed some ground for defendant to argue his case, the witnesses' accompanying interpretations or explanations served to undercut, rather than bolster, that ground.

Defendant's proffered expert would have provided an independent evidentiary basis bolstering defendant's theory of defense. Unlike the prosecution witnesses, the defense

expert would have testified that certain physical evidence *likely would have been found* had a sexual assault occurred the way R.O. claimed it had and had a proper investigation been conducted. The defense expert's testimony would not, then, have simply been cumulative of, or inferentially the same as, that provided by prosecution witnesses.

Here, although the prosecution's case against defendant was strong, we cannot, in light of the lack of some physical evidence and inconsistencies between other physical evidence and reported facts, conclude that the proof of defendant's guilt was overwhelming. Under the circumstances, we conclude that a reasonable possibility exists that defendant's inability, because of a lack of funding, to present expert testimony may well have affected the jury's verdict. Thus, defendant's conviction must be reversed. *See People v. Scearce,* 87 P.3d 228, 234 (Colo. App.2003).

### II. *Remaining Contentions*

Because they are likely to arise on retrial, we address several of defendant's remaining contentions, as guidance for the trial court.

### A. *Evidence of Defendant's Prior Sex Assaults on Children*

Evidence of other uncharged crimes is admissible "if, but only if, it is logically relevant for some reason apart from an inference that the defendant acted in conformity with a character trait, and if the probative value of the evidence for that other reason is not substantially outweighed by the other policy considerations of [CRE] 403." *People v. Rath,* 44 P.3d 1033, 1038 (Colo.2002).

 A trial court has considerable discretion in determining whether evidence has logical relevance in tending to prove a material fact and also in balancing its probative value against its potential for unfair prejudice. *See People v. Saiz,* 32 P.3d 441, 446 (Colo.2001). On appeal of a trial court's ruling admitting other bad act evidence, we accord the evidence the maximum probative value attributable to it by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *Rath,* 44 P.3d at 1043. And we will uphold the trial court's ruling unless it was manifestly arbitrary, unreasonable, or unfair. *Id.*

Here, the evidence of defendant's other bad acts involved sexual assaults upon young girls, aged seven and ten. One girl was defendant's step-niece, who lived next door to him; the other was the granddaughter of a person who lived in the same apartment building as defendant. According to the girls, defendant touched their vaginal areas and forced, or attempted to force, them to touch his penis in various apartments within the complex where they lived.

The trial court admitted the evidence of defendant's other sex assaults, despite the different ages and gender of defendant's prior victims and the difference, in at least one respect, in sex acts. The court found that (1) the prior acts were relevant "on the material fact of whether defendant approached the alleged victim by means of a trusting relationship and used cajoling and force to obtain sexual gratification"; and (2) apart from bad character, the prior acts tended to establish defendant's intent and motive to act for the purpose of sexual arousal, gratification, or abuse.

Under our caselaw, the challenged evidence was relevant to show, independent of any inference of bad character, defendant's intent and motive. *See People v. Larson,* 97 P.3d 246, 249–50 (Colo.App.2004) (upholding admission of prior acts of fondling and fellatio in case of alleged indecent exposure to, and fondling of, young child, to show intent, that is, "to show that the encounters with the children were not innocent, but were for the purposes of making sexual contact or grooming victims"); *People v. Leonard,* 872 P.2d 1325, 1328 (Colo.App.1993) ("the concept of motive in a sexual assault case may also address other relevant factors such as ... why a particular victim is selected for the assault").

We note that, because defendant disputed R.O.'s allegations, the prior acts evidence was also relevant to identify defendant as the perpetrator of the present offense, *see Rath,* 44 P.3d at 1040, and to rebut the suggestion, implicit in defendant's theory of defense, that

R.O. fabricated his allegations. *See People v. Victorian,* 165 P.3d 890, 893 (Colo.App.2007).

According the challenged evidence its maximum probative value and its minimum unfair prejudicial effect, we cannot conclude that the trial court abused its discretion in admitting this evidence. *See* § 16–10–301(1), C.R.S.2008 (because sexual assaults "usually occur under circumstances in which there are no witnesses except for the accused and the victim," there is "a greater need" to admit evidence of a defendant's other sexual acts, and "normally the probative value of such evidence will outweigh any danger of unfair prejudice"); *see also Rath,* 44 P.3d at 1040–41, 1043 ("where disputed testimony of the victim is the only direct evidence of the commission of the guilty act, additional evidence that is probative of that fact may have particular 'marginal' or 'incremental' probative value").

Thus, we conclude that, on retrial, the prior bad acts evidence may be admitted into evidence, accompanied, of course, with a proper limiting instruction. *See People v. Garner,* 806 P.2d 366, 374 (Colo.1991).

### B. Limitation on Defense Cross–Examination

Defendant wanted to ask one prior bad act witness whether she had initially accused someone besides defendant of having sexually assaulted her. The trial court concluded that it would have allowed the inquiry except defendant had not timely moved under section 18–3–407, C.R.S.2008, the rape shield statute, to make such an inquiry.

■ A trial court's determination of whether evidence falls within the purview of section 18–3–407 is a question of law which we review de novo. *People v. Golden,* 140 P.3d 1, 4 (Colo.App.2005).

As pertinent here, section 18–3–407 places limitations on the admissibility of "[e]vidence of specific instances of . . . a witness's prior or subsequent sexual conduct." § 18–3–407(1), C.R.S.2008 (emphasis added).

Whether defendant may pursue his inquiry without first complying with the requirements of section 18–3–407, then, depends on whether the witness's initial accusation encompassed sexual conduct *other than* that to

which she testified on direct examination at defendant's trial.

The People assert that section 18–3–407 applies because the witness's accusation encompassed discreet acts, some which the witness alleged had been committed by a third party, and others which the witness alleged were committed by defendant. Defendant, in contrast, asserts that section 18–3–407 is inapplicable because the accusation covered only one set of acts for which the witness first named the third party, and then substituted defendant, as the perpetrator.

Because the record on this point is unclear, we cannot make a definitive ruling. On remand, the parties may seek clarification on this point, or defendant can avoid the issue in the entirety simply by moving within the time prescribed by section 18–3–407(2), C.R.S.2008, to permit the proposed inquiry.

### C. Admission of Child Hearsay Evidence

■ We reject defendant's assertion that, under section 13–25–129, C.R.S.2008, the trial court improperly admitted into evidence R.O.'s hearsay statements because the witnesses who testified to those statements at trial did not participate in the pretrial hearing to determine the admissibility of the statements. *See People v. Bowers,* 801 P.2d 511, 514, 520–22 (Colo.1990). We agree with defendant, however, that the trial court did not adequately identify the specific factors that provided sufficient guarantees of reliability supporting admission of the statements. *See id.* at 518. The trial court should make such findings before it decides to allow the challenged statements into evidence upon retrial. The trial court may rule on the admissibility of the statements based on the existing record or, in its discretion, it may conduct a further hearing with respect to that subject.

The judgments of conviction are reversed, and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Judge LOEB and Judge MILLER concur.