23CA0687 Peo v Sanders 09-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0687
Jefferson County District Court No. 15CR3432
Honorable Jason Carrithers, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Miguel David Sanders, Jr.,

Defendant-Appellant.

ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE JOHNSON
Welling and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

Philip J. Weiser, Attorney General, Jillian J. Price, Deputy Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Miguel David Sanders, Jr. (Sanders), appeals the district court's order denying his Crim. P. 35(c) motion without a hearing.  We reverse the order and remand for further proceedings.

## I.    Background

¶ 2    Sanders was charged with sixty-nine counts, including two counts each of attempted first degree murder and first degree assault; multiple counts of second degree kidnapping, aggravated robbery, and aggravated motor vehicle theft; and multiple crime of violence sentence enhancers.  The charges were based on allegations that Sanders and two other men robbed a bank, burglarized a home, and assaulted multiple people, shooting at two of them.  Sanders' codefendants were also charged, and all three cases were joined for trial over the defendants' objections.

¶ 3    At trial, the prosecution advanced a complicity theory and relied heavily on DNA evidence in the presentation of its case.  Unlike his codefendants, who successfully fled the scene, Sanders was found hiding under a bus with incriminating evidence nearby, and did not deny his involvement in the charged crimes.  Rather, his lawyers argued at trial that he was overcharged; that he had a "much smaller role" than his codefendants; and that he lacked the

1

requisite knowledge and intent to be complicit in some of the offenses.

¶ 4 The jury acquitted Sanders of one of the attempted first degree murder counts but convicted him of the other attempted first degree murder count as well as several other substantive counts and crime of violence sentence enhancers. The district court sentenced him to over 350 years in the custody of the Department of Corrections. A division of this court affirmed the judgment of conviction. *See People v. Sanders*, (Colo. App. No. 17CA0142, June 17, 2021) (not published pursuant to C.A.R. 35(e)).

¶ 5 Sanders filed a timely pro se motion for postconviction relief pursuant to Crim. P. 35(c). In the motion, he requested that the court appoint him counsel and raised three claims related to his trial counsel's performance — that counsel allegedly failed to (1) retain a DNA expert; (2) prepare and properly argue in favor of severance at the motions hearing; and (3) argue that certain statutory changes should have applied to his sentence.

¶ 6 The district court did not appoint an attorney to represent Sanders and denied his motion without a hearing.

¶ 7 Sanders now appeals.

## II. Standard of Review and Applicable Law

¶ 8 We review de novo the denial of a Crim. P. 35(c) motion without a hearing. *People v. Marquez*, 2020 COA 170M, ¶ 17.

¶ 9 The district court is required to promptly deny a postconviction motion if none of the claims advanced have arguable merit. Crim. P. 35(c)(3)(IV); *People v. Segura*, 2024 CO 70, ¶ 25. A claim lacks arguable merit when the motion, files, and the record in the case clearly establish any of the following: that the claim (1) is barred as untimely or successive; (2) does not state adequate factual or legal grounds for relief; (3) states unmeritorious legal grounds for relief; or (4) states factual grounds that do not merit relief, even if true, or are directly refuted by the record. *See* Crim. P. 35(c)(3)(IV), (VI)-(VII); *Segura*, ¶ 25 n.6.

¶ 10 But when a pro se defendant requests postconviction counsel and his Crim. P. 35(c) motion raises at least one claim with arguable merit, the district court must grant the request for counsel. *Segura*, ¶ 26. At this stage of the proceedings — before any arguably meritorious claims have been briefed by defense counsel and the prosecution — the court need not decide whether an evidentiary hearing is necessary. *Id.* at ¶ 26 n.8; *see* Crim. P.

3

35(c)(3)(V). Rather, the court need only determine whether the "pro se Crim. P. 35(c) motion is wholly unfounded (i.e., that all of the claims in the motion lack arguable merit)." *Segura*, ¶ 35.

¶ 11 To sufficiently state a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must (1) "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" (the deficient performance prong), *id.* at 690; and (2) "assert facts that, if true, show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the prejudice prong), *People v. Timoshchuk,* 2018 COA 153, ¶ 22. A district court may deny an ineffective assistance claim without a hearing if the defendant fails to allege facts sufficient to satisfy either prong. *See People v. Phipps*, 2016 COA 190M, ¶ 19; *People v. Osorio,* 170 P.3d 796, 800 (Colo. App. 2007).

¶ 12 Because Sanders filed his Crim. P. 35(c) motion pro se, we must construe it broadly. *See Jones v. Williams*, 2019 CO 61, ¶ 5 ("Pleadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer."). But in doing

4

so, we may not rewrite Sanders' motion or act as his advocate. *See People v. Cali*, 2020 CO 20, ¶ 34.

## III. Analysis

¶ 13 Sanders contends that the district court erred by denying his Crim. P. 35(c) motion without a hearing and without appointing counsel. In particular, he argues that his claim that his attorneys were ineffective in failing to retain a DNA expert was sufficient to warrant the appointment of postconviction counsel. We agree with Sanders that he is entitled to appointment of counsel on this claim. We therefore do not address the merits of the remaining claims and, instead, reverse the court's order and remand the case for the court to proceed as directed by Crim. P. 35(c)(3)(V). *See People v. Chalchi-Sevilla*, 2019 COA 75, ¶¶ 23-26 (concluding that when an appellate court reverses a district court's summary denial of a postconviction motion the appropriate procedure is to remand with directions "to put the train back on the tracks at the point it derailed").

¶ 14 Specifically, Sanders asserts that, by failing to consult with a DNA expert, his counsel was unable to adequately challenge the prosecution's expert testimony about DNA evidence at trial; and if counsel had been prepared to challenge the DNA evidence

presented, he would have been acquitted of several charges, "if not the entire case."

¶ 15    In support of his claim, Sanders referenced the multiple items of DNA evidence that were introduced at trial and asserted that the DNA evidence "was crucial" to the prosecution's case. He called into question the reliability of some of the testimony provided by the prosecution's DNA expert, and asserted that, had his attorney contested the DNA evidence at trial, it would "have had a huge impact" because "the DNA evidence was the only real evidence the prosecution had that tied [him] to any of the charges." He pointed out that no eyewitnesses were able to identify him at trial and, lacking "any positive identification of [him] by witnesses to the robbery and [the] subsequent flight, . . . the DNA evidence was the only link between [him] and those crimes." Sanders also asserted that trial counsel told him that "she would love to have a DNA expert" but "there were no funds to pay for [one]." And Sanders asserted that, given the "nature and complexity of the evidence and the seriousness of the case," it was "simply unreasonable" for counsel not to seek a DNA expert to consult with and offer "rebuttal opinions" at trial.

¶ 16    We perceive nothing in the record that refutes Sanders' factual allegations.  No eyewitnesses positively identified Sanders or his codefendants at trial.  Instead, the prosecution relied heavily on DNA evidence to identify the defendants as the perpetrators — the prosecution's DNA expert testified on four separate days about which items matched Sanders', the codefendants', or the victims' DNA.  Given the enormous role that DNA evidence can have in criminal trials, and did have in Sanders' trial, we agree with Sanders that his allegations, if proved, would show that counsel's failure to, at a minimum, consult with a DNA expert based on a purported lack of state funding could amount to deficient performance.  *See People v. Marks*, 2015 COA 173, ¶ 41 ("[J]urors place great emphasis on DNA evidence — so much so that the evidence has long enjoyed a status of 'mythic infallibility' for juries." (quoting *Virgin Islands v. Byers*, 941 F. Supp. 513, 526 (D.V.I. 1996))); *see also* § 18-1-403, C.R.S. 2025 ("All indigent persons who are charged with or held for the commission of a crime are entitled to legal representation *and supporting services at state expense* . . . ." (emphasis added)).

¶ 17    In rejecting Sanders' claim that trial counsel's performance was deficient, the district court found that "[c]ounsel was entitled to formulate a strategy that was reasonable at the time." We recognize that a challenged action of counsel "might be considered sound trial strategy under the circumstances of a particular case," *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003), and that a court considering a claim of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *People v. Newmiller*, 2014 COA 84, ¶ 16. Here, however, the existing record is inadequate to show whether or not trial counsel's decision to hire, much less consult with, a DNA expert was an informed strategic decision. And except for the rare situation in which the trial record reveals defense counsel's reasoning for a particular strategic decision, a postconviction hearing is the most effective way to accomplish this task. *See Ardolino*, 69 P.3d at 78. Therefore, it was error for the court to reject Sanders' deficient performance claim on the basis of strategy without examining, after a hearing, the actual reasons underlying counsel's actions.

¶ 18     We are not persuaded otherwise by the Attorney General's argument that Sanders' counsel was not ineffective by deciding not to secure a DNA expert because a DNA expert was not an essential ingredient of Sanders' defense.  In support, the Attorney General argues that the prosecution advanced a complicity theory and Sanders did not deny his participation in the crime spree, therefore, "identity was not the question."  The Attorney General misconstrues Sanders' claim.  Identity was not in dispute at Sanders' trial because his attorneys chose not to question it.  But a defendant "is entitled to a pretrial investigation sufficient to reveal potential defenses and the facts relevant to guilt or penalty."  *Davis v. People*, 871 P.2d 769, 773 (Colo. 1994); *see also People v. Bergerud*, 223 P.3d 686, 705 (Colo. 2010) (recognizing that attorneys have a duty to investigate possible defenses or make reasonable determinations not to pursue them).  Given the complexities inherent in DNA evidence, Sanders' counsel's alleged decision not to even consult with a DNA expert would be reasonable only "to the extent that reasonable professional judgments support the limitations on [the] investigation."  *Ardolino*, 69 P.3d at 76.  And Sanders' assertion that his trial counsel "would [have] love[d] to have a DNA expert" but

9

lacked funds to do so, if true, is troubling, particularly given the hundreds of years in prison Sanders potentially faced. *Cf. People v. Orozco*, 210 P.3d 472, 477 (Colo. App. 2009) (reversing conviction where "a reasonable possibility exists that [the] defendant's inability, because of a lack of funding, to present expert testimony may well have affected the jury's verdict").

¶ 19     We also agree with Sanders that he has alleged sufficient facts that, if true, show that his counsel's deficient performance prejudiced him. By procuring a DNA expert, Sanders' counsel could have rebutted both the lack of an eyewitness identification and the strong emphasis that the prosecution placed on the DNA evidence throughout trial. This, in turn, could have reasonably led the jury to reach a different result at his trial.

¶ 20     We take care to note that our task is to determine whether Sanders sufficiently *alleged* prejudice, not whether he *proved* (or will be able to prove) it. Thus, to the extent the district court's order suggests that Sanders' motion fails on prejudice grounds because it lacks "evidence" directly challenging the conclusions reached by the state's DNA expert at trial, we disagree. At this stage, Sanders does not have the burden to produce evidence to

support his claim that counsel failed to retain a DNA expert and was prejudiced as a result. *See White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988) ("A defendant need not set forth the evidentiary support for his allegations in his initial Crim. P. 35 motion . . . ."); *see also People v. Morones-Quinonez*, 2015 COA 161, ¶ 12 (A defendant has no duty "to provide corroborating evidence to support [their] prejudice allegation" at this stage.). Rather, Sanders must only allege facts that, if true, would provide a basis for relief. *White*, 766 P.2d at 635. He has done so.

¶ 21    In so concluding, we do not disagree that the circumstantial evidence against Sanders was strong. But based on our review of the evidence presented at trial, the circumstantial evidence did not necessarily incriminate Sanders on all the charges against him, nor did it unequivocably establish that his allegations of prejudice were without merit. Rather, we agree that trial counsel might not have needed to concede identity if counsel had hired a DNA expert to consult with in the first place. And in doing so, we cannot say with any assurance that the result of the proceeding would have been the same, as to at least some of the charges.

¶ 22    Therefore, taking all of Sanders' allegations as true, we perceive arguable merit in his claim that defense counsel was ineffective in not retaining a DNA expert to challenge the prosecution's DNA evidence.  We need not, and do not, decide whether any of his other ineffective assistance claims have arguable merit.  Nor do we address Sanders' alternative contention that the standard for appointment of counsel is lower than the threshold for granting an evidentiary hearing.

¶ 23    Accordingly, where, as here, at least one of Sanders' claims has arguable merit, the motion is not wholly unfounded and he is entitled to the appointment of counsel and further proceedings as outlined in Crim. P. 35(c)(3)(V).  *See Segura*, ¶¶ 25-26, 35.  Whether Sanders is entitled to a hearing is a question that cannot be decided until all claims, including any added by postconviction counsel, have been briefed by the parties.  *See id.* at ¶ 26 n.8.

IV.    Conclusion

¶ 24    The order is reversed.  The case is remanded for the district court to appoint defense counsel and allow counsel the opportunity to investigate and supplement, as needed, Sanders' pro se motion

with any claims counsel finds to have arguable merit.  The court should then proceed as directed by Crim. P. 35(c)(3)(V).

JUDGE WELLING and JUDGE GROVE concur.